[No. 12363.    Department One. — March 20, 1888.]

EDWARD BOOTH ET AL., APPELLANTS, *v.* J. H. HOSKINS, RESPONDENT.

WRITTEN CONTRACT — LOAN — PAROL AGREEMENT TO EXTEND TIME OF PAYMENT. — Where a contract of loan is executed in writing, a parol agreement to extend the time of payment, if made at the time of the loan, cannot change the terms of or be substituted for the written contract; and if made subsequently, cannot create a new or continuing contract, so as to take the original contract out of the operation of the statute of limitations.

MORTGAGE — DEED TO SECURE INDEBTEDNESS. — A deed absolute on its face accompanied by a contemporaneous defeasance showing that it was made to secure the payment of a sum of money loaned by the grantee to the grantor, and payable at a future day with interest, is a mortgage.

ID. — BAR OF MORTGAGE DEBT — FORECLOSURE. — A mortgagee is not entitled to have his mortgage foreclosed, when the debt to secure which it was given is barred by the statute of limitations.

ID. — QUIETING TITLE BY MORTGAGOR — PAYMENT OF DEBT — CONDITION. — In an action by the mortgagor, brought after the mortgage debt had become barred by the statute of limitations, to quiet his title against the claim asserted by the mortgagee under the mortgage deed, the court may impose, as a condition to the relief asked, that the plaintiff first pays the amount of the mortgage debt.

APPEAL from a judgment of the Superior Court of Placer County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Taylor & Holl*, for Appellants.

*J. M. Fulweiler*, and *C. A. & F. P. Tuttle*, for Respondent.

BELCHER, C. C. — The plaintiffs commenced this action on the twenty-ninth day of July, 1885, to quiet their title to a quarter-section of land in Placer County. By his answer, the defendant denied that the plaintiffs, or either of them, had owned the land in question since the thirteenth day of July, 1878, admitted that he claimed to own it, and by way of cross-complaint al-

| 75 | 271 |
| 80 | 134 |
| 80 | 325 |
| 80 | 326 |
| 80 | 352 |
| 80 | 354 |
| 75 | 271 |
| 87 | 60 |
| 75 | 271 |
| 88 | 443 |
| 75 | 271 |
| 90 | 442 |
| 91 | 462 |
| 75 | 271 |
| 95 | 201 |
| 75 | 271 |
| 99 | 69 |
| 75 | 271 |
| 110 | 113 |
| 75 | 271 |
| 124 | 512 |
| 75 | 271 |
| 128 | 476 |
| 75 | 271 |
| 149 | 530 |
| 149 | 621 |
| f149 | 625 |

leged that, on the thirteenth day of July, 1878, the plaintiff Booth was the sole owner of the land, and on that day, for and in consideration of the sum of $408, gold coin, paid to him by defendant, executed and delivered to defendant a good and sufficient deed of the same, and thereby the defendant became, ever since has been, and now is, the owner thereof. And the prayer was, that the defendant's title be quieted as against the plaintiffs. The plaintiffs answered the cross-complaint and admitted the execution of the deed as alleged, but averred that it was a quitclaim deed, and was made for and as a mortgage, and was so understood and intended by the parties thereto, to secure the payment of $408, with interest thereon at the rate of one and one quarter per cent per month, due from Booth to the defendant for money loaned and advanced to him by defendant; and then further averred that all claim and demand which defendant may have had against Booth, on account of the money so loaned and advanced, was, before the commencement of the action, barred by the provisions of sections 337 and 339 of the Code of Civil Procedure.

At the trial, the deed referred to, being an ordinary quitclaim deed, was introduced in evidence, and also a paper signed by both parties, which reads as follows: "This agreement, made and entered into this thirteenth day of July, 1878, by and between Edward Booth of Placer County, state of California, and J. H. Hoskins, also of said county and state, witnesseth: That whereas, the said party of the first part has entered at the Sacramento land-office [describing the quarter-section in controversy]; and whereas, said party of the second part has furnished the said party of the first part $408, in United States gold coin, for the said above-described land; and whereas, to secure the party of the second part, the said Edward Booth has this day deeded to J. H. Hoskins his right, title, and interest in the above-described land,— now, therefore, this agreement witnesseth: That if the

said Edward Booth shall repay to the said J. H. Hoskins the sum of $408 within three months from the date of this instrument, with interest at one and one quarter per cent per month, then the said J. H. Hoskins shall reconvey to the said Booth the above-described land and all its appurtenances."

The defendant was a witness in his own behalf and testified:—

"That at the time of the execution and delivery of the said deed, Booth also delivered to him the certificate of purchase, just received from the receiver of the land-office, with the express understanding that the patent was to be delivered to him (Hoskins) when it should be issued by the government; and that, although the written instrument recited the promise to pay within three months from the thirteenth day of July, 1878, yet it was distinctly understood and agreed between him and Booth that he (Hoskins) should receive the patent and hold it as additional security, and that Booth should have a reasonable time, after the issuance of the patent, to pay the $408 and interest; that he never asked Booth to pay him, or expected Booth to pay him, or that his money was due until after the patent had been issued; that it was not until about the twenty-fifth day of July, 1881, when he went to the land-office and found that the patent had been issued during the winter preceding, and that Booth had caused it to be delivered to him by making an affidavit, etc.; that about the last of August, or in the fore part of September, 1881, he saw Booth and asked him about his getting the patent, and the payment of what Booth owed him for the purchase of the land; that Booth admitted that he got the patent, and said he was going to keep it, and that his deed to Hoskins was not good because it was not signed by Booth's wife, and that he did not propose to pay him (Hoskins) until he got ready, if at all; that then was the first time that Booth had ever been asked by him for the money,

or had refused to stand by his agreement made at the time of the payment for the land and execution of the deed."

The foregoing was all the evidence introduced by either side upon the question as to the purpose and effect of the deed from Booth to defendant, and upon the question as to whether the defendant's cause of action to recover back his money was barred by the statute of limitations or not.

The court found that prior to the execution of the deed Booth resided with his family upon the quarter-section and filed a homestead thereon, stating in his declaration of homestead all the facts required by law to be stated therein, and, among others, that the property was then of the value of $2,500; that at the time of the trial the property was of the value of $20,000; that the deed "was intended to vest the title to said premises in said Hoskins, in trust, and to secure the payment of $408, with interest at one and one quarter per cent per month, loaned by Hoskins to Booth on the day last aforesaid, to pay for and secure the title to said land from the government of the United States"; that the amount then due was $918, no part of which sum had been paid or tendered, and that defendant's right to recover the amount due him was not barred by the provisions of sections 337 and 339 of the Code of Civil Procedure.

And as a conclusion of law the court found: "That in fairness the plaintiffs ought not to have any relief in this action until they first pay the defendant his just debt; that, seeking equitable relief, they should show equity on their side; that defendant, Hoskins, is entitled to a decree foreclosing his said deed as a mortgage, and foreclosing plaintiffs of and from all right, title, and equity of redemption therein, after execution of sheriff's deed therefor according to the law and the practice of the court, and for the sum of $918, to be paid out of the amount

arising from the legal sale of said premises, over and above the sum of $5,000, exempt as a homestead."

Judgment of foreclosure was accordingly entered in favor of the defendant, from which, and from an order denying them a new trial, the plaintiffs have appealed.

The first question that presents itself for consideration is, What was the character of the defendant's deed? We think it entirely clear that the deed was intended to be and was only a mortgage. The defeasance, executed contemporaneously, shows beyond doubt that it was made to secure the payment of a sum of money loaned by the grantee to the grantor and payable at a future day, with interest. In such a case a deed absolute is held to be and is treated as a mortgage. (*Farmer* v. *Grose*, 42 Cal. 169; *Montgomery* v. *Spect*, 55 Cal. 352.)

The next question is, Was the defendant's cause of action to recover back his money barred by the statute of limitations? We think it was. By express provision of the written contract, made at the time of the loan, the money was to be repaid in three months. Under this contract the debt became due, and the statute began to run in October, 1878, and an action was consequently barred after four years from that time. There is nothing to take the case out of the general rule except the testimony of defendant that it was understood and agreed between him and Booth that the latter should have a reasonable time to pay the money after the issuance of his patent. But this agreement was oral, and if made at the time of the loan, could not change the terms of, or be substituted for, the written contract, and, if made subsequently, could not create a new or continuing contract, so as to take the case out of the operation of the statute. (Code Civ. Proc., sec. 360.) Beside, if we could accept defendant's theory we should meet with a new difficulty. Defendant learned, in July, 1881, that the patent had been issued, and in August or September following was informed by Booth "that he did not propose

to pay him (Hoskins) until he got ready, if at all," and still he waited for three years and a half after that without attempting to assert his rights. Under such circumstances the delay would seem to have been unreasonable and inexcusable.

Now, conceding, what we do not decide, that, under our law as at present framed, a mortgage upon a homestead, executed by the husband, but not by the wife, is void only as to the homestead value, and is good as to the excess (*Sargent* v. *Wilson*, 5 Cal. 504; *Moss* v. *Warner*, 10 Cal. 296; *Maybury* v. *Ruiz*, 58 Cal. 14), still the defendant's right to recover the money due him being barred, he was not entitled to have his mortgage foreclosed.

But were the plaintiffs entitled to any relief without first paying the defendant? The whole case shows that Booth justly owed the defendant all the money claimed by him. It was by the use of the money loaned by defendant that Booth acquired the title to his property, now of large value. Common honesty requires a debtor to pay his just debts if he is able to do so, and the courts, when called upon, always enforce such payments if they can. The fact that a debt is barred by the statute of limitations in no way releases the debtor from his moral obligation to pay it. Moreover, one of the maxims which courts of equity should always act upon is, as suggested by the court below, that he who seeks equity must do equity.

In accordance with this maxim, we think the plaintiffs should be denied any affirmative relief until the money justly due to the defendant is paid.

The other questions discussed by counsel do not require special notice.

The judgment and order should be reversed, and the cause remanded, with directions to the court below to enter a decree upon the findings in accordance with this opinion.

FOOTE, C., and HAYNE, C., concurred.

The COURT. —For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded, with directions to the court below to enter a decree upon the findings in accordance with the views above expressed.