[S. F. No. 5964. In Bank.—December 23, 1913.]

## ANNIE MONTGOMERY FAXON, Respondent, v. ALL PERSONS, etc., Defendants; THE HIBERNIA SAVINGS AND LOAN SOCIETY, Defendant and Appellant.

QUIETING TITLE—McENERNEY SUIT—INSUFFICIENT AFFIDAVIT—APPEAR-
ANCE OF DEFENDANT—ESTOPPEL TO QUESTION JURISDICTION.—Where
a defendant in an action to quiet title under the McEnerney Act
voluntarily appears and submits his claim in relation to the prop-
erty for adjudication, he will not thereafter be heard to contend
that the court acquired no jurisdiction by reason of the failure of
the affidavit, filed with the complaint, to show that the plaintiff was
in the actual possession of the property as is required by section 5
of the act.

ID.—MORTGAGE—NATURE OF POWER OF SALE—EXTINCTION WITH LIEN.—
A power of sale contained in a mortgage is to be deemed a part
of the security; it is a mere incident or appurtenance of the mort-
gage lien, agreed upon by the parties solely as a means of enforcing
such lien, and can have no vitality or force when the lien itself
no longer exists.

ID.—SALE UNDER POWER—DEBT BARRED BY STATUTE OF LIMITATIONS.—
A sale under a power contained in a mortgage, made after the
debt and mortgage have become barred by the statute of limita-
tions, is ineffectual for any purpose, and the purchaser thereat
acquires no interest in the property.

Id.—MORTGAGEE IN POSSESSION—RIGHT OF RETENTION AGAINST MORT-
GAGOR.—If a mortgagee, while the mortgage is still subsisting,
obtains possession of the premises in any lawful manner, his in-
terest under the mortgage enables him to retain possession and
defend it against the mortgagor or those succeeding to his title.

Id.—POSSESSION BY MORTGAGEE—ACQUISITION WITHOUT RIGHT.—A mort-
gagee who, without the consent of the mortgagor, acquires posses-
sion of the premises after the mortgage lien has become extin-
guished by the statute of limitations, cannot assert the rights of
a "mortgagee in possession" so as to be entitled to retain posses-
sion until the mortgage debt is paid.

Id.—QUIETING TITLE—MORTGAGE BARRED BY LIMITATION—NECESSITY OF
PAYING—BONA FIDE PURCHASER.—Notwithstanding the lien of a
mortgage is extinguished by the barring of the debt by limitations,
the mortgagor cannot, without paying the debt, quiet his title
against the mortgagee; but this rule is not applicable to one who
acquired the mortgaged land by purchase for a consideration after
the lapse of the time within which an action to foreclose the mort-
gage could have been brought, and at a time when the records
showed that the lien of the mortgage had become extinguished.

Id.—COSTS—WHETHER RECOVERABLE IN MCENERNEY SUIT.—The general
provisions of the Code of Civil Procedure relative to costs are ap-
plicable to proceedings under the McEnerney Act as against persons
contesting the plaintiff's claim; and the court does not abuse its
discretion, where only one defendant appears and opposes the
suit and the action becomes in effect a simple action to quiet title
between the parties, in awarding against the defendant the costs
claimed by the plaintiff.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order re-
fusing a new trial.   Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Tobin & Tobin, for Appellant.

Charles W. Slack, and Chauncey S. Goodrich, for Respond-
ent.

THE COURT.—A hearing in Bank was ordered after judg-
ment in Department One.   The court was, and still is, en-
tirely satisfied with the disposition by the department of every
point, save one, arising on the appeals.   The hearing in Bank
was ordered to enable the court to give further consideration

to the one question which it regarded as doubtful, viz., whether the plaintiff, under the facts, was precluded from obtaining a decree quieting her title against the outlawed mortgage of the defendant bank, without offering to pay the amount of such mortgage. Except for its discussion of this question, and so much of the judgment as rests on such discussion, the following opinion adopts the precise terms of the department opinion, which was prepared by Mr. Justice Angellotti.

Plaintiff, on October 1, 1907, commenced this action under the provisions of the act of June 16, 1906, generally known as the McEnerney Act, to establish and quiet her title as against all persons to a parcel of real property in the city and county of San Francisco, fronting fifty feet on Mission Street, one hundred and seventy feet on Fourth Street, and one hundred and twenty-five feet on Minna Street. In her complaint, verified by herself, she alleged that she owned an estate of inheritance in said property and that her estate, title, and interest therein is the ownership thereof in fee simple absolute. She further alleged herself to be in the actual and peaceable possession of all of said property. She filed with the complaint her affidavit sufficiently stating the matters required to be stated in an affidavit to be filed with the complaint by section 5 of said act, with the single exception that there was no statement in terms therein that she was or ever had been in actual possession of any of said property. Publication of summons was had in the manner required by the act. No one appeared to contest the claim of plaintiff except defendant Hibernia Savings & Loan Society, hereinafter referred to as the defendant. Defendant by its answer filed in January, 1908, resisted the claim of plaintiff only as to a portion of the property described in the complaint, viz., a lot fronting twenty-five feet on Minna Street by seventy feet in depth. As to this it denied that plaintiff was the owner of any interest whatever. It alleged a mortgage lien thereon by virtue of a mortgage given on August 24, 1888, by Charles O'Neill and Elizabeth O'Neill, predecessors in title of plaintiff, to secure the payment of their promissory note of the same date of one thousand four hundred dollars and interest, due one year after its date, which mortgage was duly recorded September 4, 1888, on which note no part of the

principal had been paid, and none of the interest from
April 24, 1893. It was asked that the mortgage be restored
and re-established of record and that the decree declare that
any interest in said property found to be in plaintiff is sub-
ject to the lien thereof. In its amended and supplemental
answer filed in March, 1908, it omitted its previous allegations
as to the mortgage constituting a lien on the premises and set
up title in fee simple absolute in itself, by virtue of a sale
by itself as mortgagee on March 14, 1908, to one John A.
Grennan for three thousand two hundred and forty dollars,
under a power of sale contained in said mortgage, and a trans-
fer by said Grennan to it on the same day. It further alleged
that on the same day, it entered into possession of said
property, and ever since has been and now is the owner in
fee simple absolute thereof, in the actual physical possession
of the same. It therefore asked that it be decreed to be such
owner and that its title as such be restored, as well as for
such other relief as to the court might seem just.

The findings of the trial court upon the ultimate facts of
ownership and want of interest on the part of defendant were
in favor of plaintiff, but the probative matters alleged in the
answer, including possession since March 14, 1908, were found
to be as alleged. Judgment was given thereon awarding
plaintiff the relief sought by her and declaring that defendant
has no right, title, claim, or interest in or to the property
claimed by it, or any part thereof, or any right to the posses-
sion of the same. It was further ordered thereby that plain-
tiff "have and recover from the said defendant her costs
incurred herein, amounting to the sum of $........" Judg-
ment was given March 17th and entered May 9, 1910. On
March 21st, plaintiff filed a memorandum of costs, amount-
ing to twenty-eight dollars and twenty-five cents. A motion
was made by defendant to tax the costs at five dollars only,
and on April 18, 1910, this motion was denied. We find
in the record no notice of appeal from the order denying
defendant's motion to retax the costs, but it appears to be
conceded by the stipulation of the parties attached to the
transcript that such an appeal was taken. There is an ap-
peal by the defendant from the judgment in so far as it
affects the portion of the property described in the mortgage,
and also in so far as it adjudges that plaintiff recover from

defendant her costs, and there is also an appeal by defendant from the order denying its motion for a new trial.

It is claimed preliminarily that by reason of defects in the affidavit filed with the complaint the trial court never acquired jurisdiction of the subject matter of the action, and that the judgment must therefore be declared null and void. Neither of the alleged defects was ever suggested in the lower court, and the point was made for the first time in defendant's opening brief in this court. So far as defendant possibly could waive such an objection, it has undoubtedly done so, voluntarily appearing and answering and submitting its own claim in relation to the property to the trial court for adjudication. As we have before stated, we are satisfied that the affidavit sufficiently complied with the requirements of the law except in the single matter of a showing of possession. It may well be contended that the affidavit taken by itself alone failed to affirmatively show actual possession of the property by plaintiff, as is required by section 5 of the McEnerney Act. [Stats. 1906 (Ex. Sess.) p. 80]. (*Soher* v. *Cabaniss,* 161 Cal. 548, 551, [119 Pac. 911] ; *Lofstad* v. *Murasky,* 152 Cal. 70, [91 Pac. 1008].) It may be noted that it did not show want of actual possession, as in *Lofstad* v. *Murasky,* and that the verified complaint did show such actual possession. Assuming that the affidavit was fatally defective in this regard, we nevertheless are satisfied that it should be held that in so far as the defendant is concerned the trial court had jurisdiction to give the judgment it did. Whether or not the judgment is good as against any person other than the defendant is a matter of no concern to it, and one as to which it may not be heard to complain. The defendant, as we have seen, voluntarily appeared and submitted itself to the jurisdiction of the court, thus disposing of any question as to jurisdiction of the person. The determination of the issues made by the pleadings of the plaintiff and defendant was in no way dependent upon any claim of any possible third party. As between these parties, by reason of the issues made by the pleadings, the proceeding was in substance and effect one to quiet title to real property. In no respect was the complaint defective as an ordinary complaint to quiet title except that it failed to allege any adverse claim, and any defect in this respect was fully supplied by the

answer. The superior court has original jurisdiction in "all cases in equity, and in all cases at law which involve the title or possession of real property." (Const., art. VI, sec. 5.) The lower court therefore had jurisdiction of the subject matter of the controversy *between these parties*. It can make no difference here that the proceeding was entitled as a proceeding under the McEnerney Act against "All Persons," etc., or that the complaint was framed as a complaint under said act, or that jurisdiction as to all persons was attempted to be obtained in the manner provided by said act. The same court has original jurisdiction both in proceedings under the McEnerney Act and ordinary actions to quiet title to real property. That the lower court had the essential jurisdiction of the subject matter of the controversy between the parties to enable it, the defendant voluntarily appearing and submitting itself and its claim to the jurisdiction of the court, to determine the controversy between them and to give the judgment it did in so far as the same affects defendant, notwithstanding that the proceeding was avowedly one under the McEnerney Act, is fully established by the views expressed in the following cases, viz.: *City of Santa Barbara* v. *Eldred*, 95 Cal. 378, [30 Pac. 562] ; *In re Thompson*, 101 Cal. 349, 353, [35 Pac. 991] ; *In re De Leon*, 102 Cal. 537, 541, [36 Pac 864] ; *Estate of Wells*, 140 Cal. 349, 352, [73 Pac. 1065] ; *King* v. *Pauly*, 159 Cal. 549, 553, [Ann. Cas. 1912C, 1244, 115 Pac. 210]. Under the views so expressed it is sufficient in so far as any claim of want of jurisdiction is concerned that we have a controversy between these two parties fully and definitely shown by their pleadings, one in which no other person is interested, presented by such parties to the court having, under the law, jurisdiction of the subject matter of such controversies, and determined by such court. To use the language of *Allen* v. *Belcher*, 3 Gilm. (Ill.) 594, quoted approvingly in the *City of Santa Barbara* v. *Eldred*, 95 Cal. 378, [30 Pac. 562] : "It would be trifling with courts, and the rights of parties to permit suitors, after voluntarily appearing and going to trial, to avail themselves of an objection to the preliminary proceedings by which the cause of the parties was in court."

As, in view of what we have said, the question of the effectiveness of the judgment as one against all persons under the McEnerney Act is not involved, we express no opinion thereon.

Defendant's claim of title, as we have noted, was based upon its attempted exercise of the power of sale contained in its mortgage, and the deed made to it by the grantee at the sale made thereunder. The mortgage given to defendant by Charles and Elizabeth O'Neill on August 24, 1888, to secure the payment of their promissory note for one thousand four hundred dollars of the same date and due one year after its date, contained, after the provision for ordinary foreclosure by suit, the following: "and the mortgagors hereby empower the mortgagee to sell and convey said mortgaged property at any time after default made in the payment of said promissory note, or the interest thereon, or after the breach of any obligation for which this mortgage is security. Any such sale may be public or private, at the option of the mortgagee, and may be made after such notice and for such price and on such terms as to payment or otherwise as the mortgagee may deem proper. At any such sale the mortgagee, in its own name, or in the name of any person, shall have the right to purchase, and any recitals contained in any conveyance of the mortgaged property which may be made by the mortgagee must be deemed conclusive evidence of the facts recited. The proceeds of such sale must be applied to the payment, in whole or in part, of the expenses of the sale, and of the amount due to the mortgagee upon this mortgage, and upon said promissory note, and upon any such sale counsel fees shall be allowed as a part of the expenses, at the rate of two per cent upon the amount of the debt, and the mortgagors and mortgaged porperty are hereby made liable to the mortgagee for such counsel fees." The property then stood in the name of Elizabeth O'Neill, to whom it had been conveyed on April 7, 1869, by James and Lizzie Wainwright, by deed of grant, bargain, and sale. It was subject to a homestead duly declared by the O'Neills on November 7, 1874. Mrs. O'Neill died intestate on March 24, 1890. Her estate was regularly probated, and in the probate proceedings the property in question was set apart to Charles O'Neill, the surviving husband, as a homestead regularly selected during the lifetime of the spouses. Although due notice to her creditors was given in said probate proceedings, defendant never presented to the administrator any claim on said note or on said mortgage. Said Charles O'Neill con-

tinued to occupy the property as a homestead until his own death on January 18, 1894. He left a will, which was admitted to probate on March 27, 1894, and one R. S. Thornton was appointed executor. Thornton immediately qualified as executor, and continued to act as such until after April 22, 1901, to which time he was in actual possession of this property. In the mean time,—namely, on August 24, 1892, defendant sued said Charles O'Neill on said note, and obtained personal judgment against him thereon on February 5, 1894. Thornton, as executor, was substituted as defendant on the death of O'Neill, and appealed from the judgment to the supreme court. This judgment was reversed (109 Cal. 427, [50 Am. St. Rep. 52, 42 Pac. 447]). On the return of the case to the lower court, judgment was given for defendant on the pleadings, and this judgment was reversed by the supreme court (117 Cal. 481, [49 Pac. 573]). The action was again tried, and the superior court gave judgment for the foreclosure of the mortgage. This judgment was reversed by the supreme court (123 Cal. 62, [55 Pac. 702]). On the next trial, judgment of nonsuit was given, and this judgment was affirmed February 16, 1900, and the action, terminated (127 Cal. 575, [60 Pac. 37]). No claim on said note or mortgage was ever presented to the executor, the only claim regularly presented being one on the judgment of February 5, 1894, which was subsequently reversed. No subsequent effort to enforce the mortgage appears to have been made by defendant until its attempted sale under the power in 1908. In April, 1901, Thornton as executor sold said property to Margaret English for $4,425, and on April 22, 1901, this sale was confirmed by the superior court and a conveyance directed. Such a conveyance was made on the same day, transferring to the grantee all the right, title, interest, and estate of said Charles O'Neill in said property at the time of his death and all that his estate had since acquired. This conveyance was at once recorded, and Margaret English on the next day received possession of the property. She immediately conveyed the property to plaintiff, who at once went into actual possession and continued in such actual possession until dispossessed by defendant on March 14, 1908. The evidence was of such a nature as to sufficiently support the finding to the effect that defendant

on March 14, 1908, cut the fence on Minna Street in front of the property, and thereupon entered upon and took possession of the property. There is no pretense that plaintiff in any way authorized any such taking of possession by defendant, or that defendant acquired possession in any other way than by simply taking it in the absence of the owner, under the sale made in pursuance of the power contained in the mortgage.

From what we have said it is obvious that at the time defendant attempted to execute the power of sale, not only were both the mortgagors dead, but the debt, note, and mortgage had many years prior thereto become barred by our statute of limitations, and any lien created by the mortgage had been extinguished, section 2911 of the Civil Code providing that "a lien is extinguished by the lapse of the time within which, under the provisions of the Code of Civil Procedure, an action can be brought upon the principal obligation." By section 2877 of the Civil Code, contracts of mortgage are expressly made subject to the provisions of this section, as well as all other sections of the chapter relative to liens. A similar situation to that here presented was before the district court of appeal for the first district in *Goldwater* v. *Hibernia Savings & Loan Society,* 19 Cal. App. 511, [126 Pac. 861], decided by that court July 22, 1912. The defendant there was proceeding to execute by sale a similar power contained in a mortgage given by the plaintiff's predecessor upon her homestead. As is true here, it had previously attempted to foreclose its mortgage by suit, but had failed therein because it had never presented its claim on the note secured by the mortgage on a homestead to the administrator of the estate of the deceased mortgagor. The debt, note, and mortgage were barred by the statute of limitations at the time of the attempt to execute the power of sale. The plaintiff brought his action to enjoin the threatened sale, and prevailed in the lower court. The district court of appeal in affirming the judgment, held that under our statutory provisions the power of sale was nothing more than a lien imposed upon the mortgaged land to secure the payment of the debt, and that it was therefore extinguished by the lapse of the time within which, under our statute of limitations, an action could be brought upon the note the payment of which

it was given to secure. In denying a petition for a rehearing in this court, we said that the decision of the district court of appeal was correct, "regardless of the question whether a power of sale included in a mortgage is, or is not, technically a lien"; and that by reason of the fact that the debt, note, and mortgage had become barred, the lien of the mortgage was extinguished, and the mortgagee, as holder of the power, was without any interest whatever in the land, as lienholder, or at all, and that, consequently, on well settled principles, the interest once coupled with it had then ceased to exist, it had become a naked power, and the mortgagor being dead, the power had terminated with the extinction of the interest. (19 Cal. App. 517, [126 Pac. 863].) This, of course, was tantamount to saying that the only possible interest coupled with the power of sale was such interest as was essential to the *enforcement of the lien of the mortgage* by the execution of the power, and that such interest, together with the remaining naked power, necessarily terminated with the extinguishment of the mortgage lien. As was shown by the opinion of the district court of appeal, while such a power of sale is authorized in a mortgage by the terms of section 2932, it is, by the terms of section 858 of the Civil Code, "to be deemed a part of the security." It is a mere incident or appurtenance of the mortgage lien, agreed upon by the parties solely as a means of enforcing such lien, and can have no vitality or force when the lien itself no longer exists. In view of our statutory provisions bearing upon the question, provisions differing materially from those of many other states, as is shown by the district court of appeal opinion in the Goldwater case, we are satisfied that the power of sale terminated with the extinguishment of the mortgage lien. There is nothing in the suggestion that this conclusion as to the effect of section 2911 of the Civil Code, renders the section one depriving defendant of "rights vested under contract." The contract of mortgage must be read in the light of the sections to which we have referred, including said section 2911, all of which existed in their present form at the time the mortgage was given, and there being nothing in the language used in the contract to indicate that the parties intended that the power of sale should outlast the time prescribed by law for the existence of the mortgage lien, if any inference can

be indulged in, it, as suggested by counsel for plaintiff, must be the inference that the parties had section 2911 of the Civil Code in mind, and contracted with reference to it. Therefore no question is presented as to any interference with contract rights.

It follows from what we have said, that the attempted sale under the power was ineffectual for any purpose, and that defendant acquired no interest in the property by its deed from the purchaser at such sale.

Defendant claims that even if it did not obtain title to the property by reason of such sale, and the conveyance from the purchaser, yet by virtue of its entry into actual possession thereunder it has become a mortgagee in possession, and is entitled to retain such possession until the debt of plaintiff's predecessors in title, the O'Neills, is satisfied by payment. No rule is more firmly established in this state than the one to the effect that notwithstanding "the lien of a mortgage is 'extinguished' by the barring of the debt by the statute of limitations, the mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee, or maintain ejectment against his mortgagee in possession." (See *Puckhaber* v. *Henry,* 152 Cal. 423, [125 Am. St. Rep. 75, 14 Ann. Cas. 844, 93 Pac. 114], and cases there cited.) We are satisfied, however, that defendant cannot reasonably be held to be a "mortgagee in possession" within the meaning of these words as used in the rule. Ordinarily the mortgagee in possession must be one who has been placed in possession by the mortgagor or his successor in interest, or has gone into possession with the consent, express or implied, of such party. This is so because under such statutes as we have in California, the mortgage is purely a lien and does not entitle the mortgagee to possession. But it is established in this state that under certain circumstances a mortgagee who has acquired possession without the consent, express or implied, of the mortgagor, may be held to be within the term "mortgagee in possession." This matter was discussed at some length in *Burns* v. *Hiatt,* 149 Cal. 617, [117 Am. St. Rep. 157, 87 Pac. 196], a case strongly relied on by defendant, and such a person was there held to be "a mortgagee in possession." This case was followed and approved in *Raggio* v. *Palmtag,* 155 Cal. 797, [103 Pac. 312].

In the former of these cases, foreclosure proceedings regularly and in due season instituted on the defendant's mortgage resulted in a decree of foreclosure and sale, and the defendant purchased the property at the sale, received his deed and entered into possession peaceably and in good faith. Plaintiff was a grantee of the property from the mortgagor by conveyance subsequent to the mortgage. The proceedings were ineffectual as against him solely because he was not made a party defendant therein. It was said by this court that the rule relating to a mortgagee in possession was one based solely upon equitable considerations, and that so considered, it was settled by the authorities that it was not always essential to a right to possession in the mortgagee that the mortgagor should have assented thereto. This conclusion was based upon certain views expressed by Professor Pomeroy in his Equity Jurisprudence, and certain decisions in line therewith. The settled doctrine, as stated by Professor Pomeroy, and shown by the opinion, was substantially that while the mortgagee is declared to have no legal estate and is unable to recover possession against an unwilling mortgagor or owner of the fee subject to the mortgage, yet if the mortgagee, while the mortgage is still subsisting, does "in any lawful manner" obtain the possession, his interest under the mortgage enables him to retain such possession, and to defend it against the mortgagor or those succeeding to his title. Further, that if through the mortgagor's consent, or "any other lawful means," the mortgagee has been permitted to obtain possession of the land, the mortgagor's only remedy is the equitable suit for a redemption. It was said by this court that "the true rule would appear to be that where the mortgagee has, under color of the mortgage or legal proceedings based thereon, acquired possession without resort to force, fraud, or any other unlawful or wrongful means upon which he would be estopped to found a right, and under such circumstances as not to make it inequitable that he should retain such possession as security, he will be regarded as a mortgagee in possession," it being further settled, as shown by the authorities, that where for any reason foreclosure proceedings are void, the mortgage continues alive for the benefit of the mortgagee or purchaser at the foreclosure sale, as his assignee, and also that if the person en-

titled to the benefit of the mortgage peaceably and in good faith, under color of such foreclosure proceedings, enters into possession, he does obtain possession in a lawful manner and is a mortgagee in possession. This was the full extent of the ruling in *Burns* v. *Hiatt,* 149 Cal. 617, [117 Am. St. Rep. 157, 87 Pac. 196]. In *Raggio* v. *Palmtag,* 155 Cal. 797, [103 Pac. 312], the taking possession was by a mortgagee who had presented against the estate of the mortgagor what purported to be her claim on note and mortgage, the same had been allowed by the administrator and approved by the judge of the court, and the mortgaged property was subsequently sold in the probate proceedings to the mortgagee for two hundred and eighteen dollars in excess of the amount of her claim, the mortgage debt being credited on the purchase price as allowed by the law. It was claimed that the claim presented against the estate was fatally defective in certain respects, and that as the property was homestead property, the lien of the mortgage was forever lost. One of the grounds of the decision was that if the claim presented was defective, nevertheless the mortgagee was a mortgagee in possession. Practically, her entry was under proceedings by the mortgagee for the enforcement of her mortgage, commenced by the attempted filing of a claim during the life of the mortgage. There is absolutely nothing in either of these cases or in any case that we have seen that gives countenance to the claim that any such result can follow an attempt to enforce a mortgage lien begun after such lien has been effectually "extinguished," and is no longer in existence as a subsisting lien. As we have seen, Mr. Pomeroy states as one of the elements essential to the application of the rule the fact that the mortagage "is still subsisting." This requirement would probably be held to be satisfied where the entry was made after the lapse of the time within which an action could be brought upon the principal obligation, provided the proceeding upon which it was based was initiated prior to the lapse of such time, but in none of the cases cited does it appear that the entry was in fact after the lapse of such time. However this may be, it appears clear to us that no such claim can properly be made upon an entry based upon proceedings for the enforcement of the lien instituted after the lien has been extinguished. The lien, together with

all its incidents and appurtenances, being absolutely at an end, can no longer serve as a sufficient basis for the institution of any proceeding looking to its enforcement, or for the conclusion that one entering under any such proceeding entered "under color of the mortgage" within the meaning of those words as used in *Burns* v. *Hiatt,* 149 Cal. 617, [117 Am. St. Rep. 157, 87 Pac. 196]. To confer any right of possession under the rule, the proceeding must at least have been based upon an existing mortgage, not upon one that is dead and no longer a foundation for any enforceable right. We are satisfied that the defendant cannot be held to be a mortgagee in possession.

It is however claimed that even if defendant is not a mortgagee in possession, nevertheless, under the rule we have referred to, plaintiff should not have been allowed to obtain a judgment quieting title against the mortgage, so long as the debt to secure the payment of which it was given remains unpaid. The judgment given does so quiet the plaintiff's title against the mortgage, and it is urged that a reversal must be had for this reason. As is said in an earlier part of this opinion, it is the settled rule that notwithstanding the lien of a mortgage is extinguished by the barring of the debt by limitation, the mortgagor cannot, without paying his debt, quiet his title against the mortgagee. (*Booth* v. *Hoskins,* 75 Cal. 271, [17 Pac. 225]; *De Cazara* v. *Orena,* 80 Cal. 132, [22 Pac. 74]; *Spect* v. *Spect,* 88 Cal. 437, [22 Am. St. Rep. 314, 13 L. R. A. 137, 26 Pac. 203]; *Brandt* v. *Thompson,* 91 Cal. 458, [27 Pac. 763]; *Burns* v. *Hiatt,* 149 Cal. 617, [117 Am. St. Rep. 157, 87 Pac. 196].) The doctrine rests upon purely equitable principles. In *Booth* v. *Hoskins,* 75 Cal. 271, [17 Pac. 225], the court says: "Common honesty requires a debtor to pay his just debts if he is able to do so, and the courts, when called upon, always enforce such payments if they can. The fact that a debt is barred by the statute of limitations in no way releases the debtor from his moral obligation to pay it. Moreover, one of the maxims which courts of equity should always act upon is . . . that he who seeks equity must do equity." In *Spect* v. *Spect,* 88 Cal. 437, [22 Am. St. Rep. 314, 13 L. R. A. 137 26 Pac. 203], the basis of the rule is thus stated: "Whenever a mortgagor seeks a remedy against his mortgagee which appears

to the court to be inequitable, whether it be to cancel the mortgage as a cloud upon his title, or to enjoin a sale under the power given by him in the security, or to recover from the mortgagee the possession of the mortgaged premises, the court will deny him the relief he seeks, except upon the condition that he shall do that which is consonant with equity.'' The respondent contends, and we think rightly, that the rule in question should not be extended to a case in which a liability to pay the debt does not, in morals and equity, rest upon the plaintiff or his property. Where the plaintiff is himself the debtor, the applicability of the rule is apparent. No different situation is presented where the plaintiff has bought the land before the right to foreclose the mortgage has become barred. In such case, he acquired the property subject to a valid existing lien, which was, presumably, taken into account in fixing the purchase price. Such property, when he acquired it, was bound by the debt, and it would be as inequitable to relieve him of the burden without payment as it would be to thus free the original debtor.

In the present case, however, the plaintiff acquired the land by purchase for a consideration after the lapse of the time within which an action to foreclose the mortgage could have been brought—after, indeed, it had been decided in this court that there was no right of foreclosure. The plaintiff was not personally liable for the debt, and was under no moral obligation to discharge it. When she bought the land, the records showed that the lien of the mortgage had become extinguished. (Civ. Code, sec. 2911.) It is difficult to see, therefore, how the land itself, so bought, was bound, legally or equitably, by the debt. There seems to be no good reason for refusing to quiet the title of an owner in the situation of the plaintiff here. To apply the rule contended for by appellant to such a case would be equivalent to holding that the owner of the property could never have his title quieted against an unpaid mortgage not satisfied of record, however long the lapse of time since the maturity of the debt, and however numerous the transfers since the expiration of the right to foreclose. To so hold would result in perpetuating clouds upon titles, where no substantial equity demands that the merchantability of real property be thus hampered.

CLXVI Cal.—46

None of the decisions in this state, or elsewhere, so far as we are advised, has denied relief to a plaintiff seeking to quiet his title against an outlawed mortgage by which neither he, nor his land, was equitably bound. On the other hand, *Kingman* v. *Sinclair,* 80 Mich. 427, [20 Am. St. Rep. 522, 45 N. W. 187], may be cited as an authority supporting the respondent's contention.

We are of the opinion that the general provisions of our Code of Civil Procedure relative to costs are applicable to proceedings under the McEnerney Act as against persons contesting the plaintiff's claim. It is unnecessary in this case to determine whether such a proceeding is governed by the provisions of section 1022 of the Code of Civil Procedure, allowing costs of course to the plaintiff in certain cases, or by section 1025 of the Code of Civil Procedure, which provides that in other actions than those mentioned in section 1022, costs may be allowed or not and if allowed may be apportioned between the parties on the same or adverse sides, in the discretion of the court. Assuming the last named section to be the one applicable, there was no abuse of discretion on the part of the trial court in awarding as against defendant the costs claimed by plaintiff. In the case at bar there was but one parcel of land described in the complaint and summons, and only one party, this defendant, made opposition to the relief sought. As we have said, the action in substance and effect became a simple action to quiet title between plaintiff and defendant, and no costs in addition to those that would have been recoverable by plaintiff in such an action appear to be included in the memorandum of costs. It is not disputed that expense incurred in the publication of summons is in general properly taxable as costs, and the amount charged therefor in this case was no greater than it would have been had the description of land therein included only the portion of the parcel described which was claimed by defendant. The court did not err in refusing to grant the motion of defendant to retax costs.

There was no merit in defendant's motion for a new trial on the ground of newly discovered evidence.

The judgment is affirmed. The orders denying a new trial and the motion to retax costs are affirmed.

Beatty, C. J., does not participate in the foregoing.