CLARA BURDETTE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37321.   Promulgated February 29, 1932.

*A. Calder Mackay, Esq.,* for the petitioner.
*B. M. Coon, Esq.,* for the respondent.

## OPINION.

LANSDON: The Revenue Act of 1921 provides in section 234 (a) (5) that the class of deductions contended for by the petitioner in this appeal, shall be allowed in cases where the bad debts are ascertained to be worthless and charged off within the taxable year. It is conceded that these debts were charged off by petitioner in 1924; also that they were worthless at the time. The respondent contends, however, that they were worthless and uncollectible in prior years, and, that in the situation which obtained in 1923, we must, as a matter of law, regard the petitioner as having ascertained their true condition not later than that year.

Conceding that forcible collection of the notes was barred by the statute of limitations at the time she presented them to the executor for payment, the petitioner now makes a special plea of fact, which, she claims, entitles her to the deductions in the taxable year. She asserts, that in good faith and in virtue of the memorandum given

to her by the son prior to his death, which she believed was a sufficient acknowledgment under the California laws to revive the statute and extend their enforceable life, she considered the notes good until their repudiation. The record convinces us as to the good faith of the petitioner. Her claim is based upon actual worthlessness for which the law intended she could apply in reduction of her taxes. As against her contention that the proper year for such deduction was 1924, when she first learned that nothing would be paid on her notes, the respondent asks us to indulge in an irrebuttable legal presumption that the notes, in fact, lost all value at the death of their maker in October, 1923, because no one thereafter could waive the statute of limitations which barred their forcible collection. He argues, also, that since all persons are presumed to know the law, the petitioner was chargeable with knowledge of worthlessness at the time and that it must be presumed that she ascertained her loss in that year and not in 1924.

We think the respondent's position in respect to both points stated is unsound in law. In the first place, although the statute of limitations had run on these notes and their maker's executor was without power to waive that bar, such fact did not *per se* destroy their value, since they were still bona fide debts in favor of the petitioner. *Booth* v. *Hoskins*, 75 Cal. 271; 17 Pac. 225; *De Cazara* v. *Orina*, 88 Cal. 437; 22 Pac. 74; *Spect* v. *Spect*, 88 Cal. 437; 26 Pac. 203. Outlawed notes, in suits by an administrator against their holder, have been successfully pleaded in matters of defense (see *Puckhaber* v. *Henry*, 152 Cal. 419; 93 Pac. 114), and we are unable to say in this case what the value of these notes may have been in the hands of the petitioner. A statute of limitations takes away no right of property (Cooley on Const. Law, p. 340) and, being merely a statute of repose, determines no issues of merit between debtor and creditor. *Terry* v. *Anderson*, 95 U. S. 623. The debtor has no vested right in such a defense. A legislature may repeal or extend the statute and revive the right of action at any time. A suit may be successfully maintained on them in another jurisdiction, if brought within the period there allowed, and service is obtainable on the debtor. *Campbell* v. *Holt*, 115 U. S. 620; *McEldowney* v. *Wyett*, 44 W. Va. 711; 45 L. R. A. 609; *Hulbert* v. *Clark*, 129 N. Y. 295; 14 L. R. A. 59.

If, however, we could agree with the contentions of the respondent on his first proposition as to the date when these notes became uncollectible, we are not persuaded that the petitioner is legally bound to take notice of such date. The provisions of law which allow the deduction here. claimed require the petitioner to show that she charged the amount off her books in the year of ascertainment of its worthlessness, from which we think it follows that she must have

actual and not constructive knowledge of the facts in order to take advantage of its provision. Where property rights alone are affected by actual knowledge of a basic fact, there is no rule of law which conclusively presumes such knowledge. *Black* v. *Ward*, 27 Mich. 191. The maxim that everyone is presumed to know the law has no application here. Its provisions are limited to the necessities which gave rise to its adoption in order to prevent offenders against criminal laws from pleading ignorance as a defense, and, in cases of fraud, to escape responsibility for their acts. *Topolewski* v. *Plankington Packing Co.*, 126 U. S. 554. In this case the court, anent the doctrine discussed, among other things, said:

There is no presumption in this country that every person knows the law; it would be contrary to common sense and reason if it were so * * *. If everybody knew the law there would be no need of courts of appeal whose existence show that judges may be ignorant of the law.

It is obvious that the statute here applicable intended that the taxpayer, and not the law, should determine when bad debts were to be considered worthless in his hands, requiring only that good faith be shown. The provision here discussed has been many times construed by the courts and this Board, and it has been always held that it is the date of ascertainment of worthlessness by the taxpayer, and not of the worthlessness as later facts might develop, which governs. *Jones* v. *Commissioner*, 38 Fed. (2d) 550; *Stephenson* v. *Commissioner*, 43 Fed. (2d) 348; *Murchison National Bank*, 1 B. T. A. 617; *Samuel Bird*, 4 B. T. A. 259; *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566; *Mitten* v. *Commissioner*, 11 B. T. A. 731; *R. B. Lawler, Executor*, 17 B. T. A. 1083; *Ida C. Calloway, Executrix*, 18 B. T. A. 1059; *American Warehouse Co.*, 19 B. T. A. 8. In *United States* v. *Frost*, 25 Fed. Cas. 1221, No. 15,172, this identical provision, then a part of the income-tax law of 1864, came before the United States District Court for the Northern District of Illinois for construction; the question being whether or not the judgment of the taxpayer, in respect to a similar claim, should prevail as against facts indicating worthlessness at a different date. Respecting the language used in that law, which was identical with the recitals here considered in section 214, *supra*, the court, among other things, said:

The language is " to ascertain to be worthless." By whom or how? The law is silent on this important point, and, therefore, there must be a discretion given to the person making his return, and if that discretion is used fairly and honestly there would seem to be no just ground for complaint.

There has been no change of opinion expressed by the courts in respect to the construction put upon this provision of the tax laws since the early decision just cited; and in *American Trust Co.* v. *Commissioner*, 31 Fed. (2d) 47, the court, in recognition of the falli-

bility of human judgment, held that, to entitle the taxpayer to take such a deduction, the ascertainment need not be absolute and that a claim may be duly ascertained to be worthless though later it may prove to be in fact collectible.

It follows, from this holding, that in a reverse situation, where an over optimistic taxpayer erred in judgment, the same *good faith* when exercised in ascertainment of worthlessness must be the only criterion by which we can determine his rights. In support of this view, the court in *Jones* v. *Commissioner, supra*, said:

> In the light of subsequent events, it is quite easy now to determine that the debt was worthless before 1921; but the real question with which we are concerned is, not when did the debt become worthless, but when did decedent ascertain it to be worthless.

Also, in *Murchison National Bank, supra*, and in *Samuel Bird, supra*, the deductions were allowed by this Board for years subsequent to those in which the admitted facts show the debts were actually worthless. Our decisions in these two cases would seem to apply here, in view of the respondent's contention that when, in the eyes of the law, forcible collection of an obligation is considered at an end, the taxpayer is bound to take notice of such fact and claim his deduction in that year. The claims in the cases cited were based in each case on investments made in bonds of the Imperial Russian Government, which was overthrown in March, 1917. In January, 1918, the Soviet Government, by official decree, repudiated all of such bonds, which entirely destroyed their value as of and from that date. The petitioners deferred claiming their deduction until later years, trusting for a fortunate turn in events to restore the lost values. Of course all of these bonds were as "uncollectible" after February, 1918, as were the petitioner's notes after October, 1923, but their holders considered them as having value notwithstanding. In the *Murchison National Bank* case the taxpayer ascertained worthlessness and charged off the amount thereof on part of its bonds in 1920. This Board allowed the deduction so claimed, and in its opinion said:

> The Soviet Government on February 8, 1918, repudiated the bonds which taxpayer held, and from that date to the present time has not revoked, rescinded or modified its decree of repudiation. The bonds matured on June 18, 1919, but were not paid; they still remain unpaid. We know of no method or tribunal by which or before which taxpayer can enforce payment of the obligation. In short, we cannot see that at the present time the bonds have any value whatever, unless it be a mere speculative value, or that they had any more value in 1920 than at the present time. We are of the opinion that the bonds were worthless in 1920, and, in view of the circumstances under which they were charged off, the taxpayer should be permitted to take the full amount paid for the bonds as a deduction in determining its net income for that year.

Whatever may have been the basis of the petitioner's belief in the value of her notes after the death of her son, her failure to claim a deduction in 1923, which she might easily have done, indicates to us her good faith in their worth up to the time she now claims she actually ascertained that they were, in fact, worthless. Her belief in the sufficiency of the written memorandum, delivered to her in May preceding her son's death, to extend the collectible life of the notes was, under the circumstances, adequate to justify her presenting them to the executor for payment, or for bringing suit upon them in event payment was refused. Cf. *Appeal of Kate I. Nixon*, 2 B. T. A. 524. The year of ascertainment of the loss here involved was 1924.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

Morris, Sternhagen, Arundell, and Van Fossan dissent.