Filed 5/13/16  Wray v. Bank of America CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NORMAN J. WRAY et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> BANK OF AMERICA, N.A. et al., <br><br> Defendants and Respondents. | A142720 <br><br> (Sonoma County <br> Super. Ct. No. SCV 253008) |

Plaintiffs Norman and Anna Wray appeal from the dismissal of their lawsuit which seeks to forestall a nonjudicial foreclosure sale.  As in numerous foreclosure cases in recent years, the Wrays claim an assignment of their loan was not properly effectuated and the foreclosing institution has no right to proceed.  However, unlike many of these cases, the Wrays allege only a claim to quiet title.  The trial court sustained defendants' demurrer to the Wrays' third amended complaint on the ground they did not, and could not, allege tender of the debt they owe.

In its recent decision in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919 (*Yvanova*), the Supreme Court did not address the issue of tender, concluding only that a mortgagor has standing to pursue a postsale wrongful foreclosure claim for damages on the basis of allegations the transfer of their loan to the foreclosing institution was void (not merely voidable).  The court expressly did not reach other issues percolating in the postsale wrongful foreclosure context, let alone in the context of preemptive claims.

1

We need not, and do not, reach the issue of tender, since *Yvanova* leaves intact the uniform view of the courts of appeal that preemptive challenges to nonjudicial foreclosure cannot be predicated solely on generic allegations that a foreclosing entity lacks authority to do so. As the court explained in *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 (*Gomes*), nonjudicial foreclosure is a creature of statute and intended to be an efficient and expeditious means of recovering on a delinquent debt; it cannot be morphed into a protracted judicial process on the basis of vacuous allegations of lack of authority to foreclose.

Even assuming there may be cases in which a plaintiff's allegations are sufficiently specific to fall outside *Gomes* (and within what has come to be called the "*Gomes* exception"), the Wrays' allegations, despite three amended pleadings and their proposed additions suggested at oral argument, do not suffice, particularly in light of the loan documents that were properly subject to judicial notice.

We therefore affirm the judgment.

### BACKGROUND

The Wrays allege the following in their operative complaint: They obtained a $2.1 million mortgage loan from Washington Mutual in 2005, secured by their home in Glenn Ellen. Washington Mutual "disposed of its interest" in the loan "in 2005." Washington Mutual went bankrupt in 2008, and the FDIC took over as receiver.

Judicially noticeable documents (see *Yvanova, supra,* 62 Cal.4th at p. 924, fn. 1) show that in 2005, within days of Washington Mutual entering bankruptcy, defendant JP Morgan Chase, N.A. (Chase) agreed with the FDIC to acquire the failed bank's assets.

In June 2012, Chase, acting as the attorney in fact for the FDIC, executed an assignment of the Wrays' deed of trust and attendant rights to defendant Bank of America, N.A. (BofA). Two months later, in August 2012, defendant MTC Financial Inc. d/b/a Trustee Corps (Trustee Corps), claiming authority to act as an agent for the trustee or beneficiary of the deed of trust BofA, recorded a notice of default and election

to sell, asserting the Wrays were $299,248.88 in arrears. The notice told the Wrays to contact BofA care of Trustee Corps to arrange for payment of the amount owed. In December 2012, Trustee Corps recorded a notice of trustee's sale estimating the total unpaid balance, plus costs, expenses, and advances, as $2,437,665.31.

Meanwhile, in August 2012, the Wrays wrote to the FDIC pursuant to the federal Freedom of Information Act (FOIA; 5 U.S.C. § 552). They sought "any and all information the FDIC may have" regarding the ownership or transfer of their note or loan, and regarding "whether or not the rights transferred to [Chase] in the FDIC transactions in regards to [our] note/loan were servicing rights or rights to whole loans, or otherwise." The FDIC reported it had no responsive records.

The Wrays eventually filed suit against BofA, Chase, and Trustee Corps, seeking to halt the foreclosure. Their initial complaint alleged causes of action for quiet title, declaratory relief, and injunctive relief. In response to a demurrer, the Wrays filed a first amended complaint, asserting a single cause of action to quiet title. BofA and Chase then successively demurred to the first, second, and third amended complaints, supported by a request for judicial notice of a number of documents pertinent to the foreclosure.

Each of the Wrays' amended complaints alleged quiet title, but failed to allege they had tendered the amount owed on the loan. The trial court viewed this as a fatal defect, denied leave to amend, and entered judgment in favor of BofA and Chase.

## DISCUSSION

By statute, a complaint to quiet title must be verified and include the following: a property description, the basis of the plaintiff's title, "[t]he adverse claims to the title of the plaintiff against which a determination is sought," the date as to which that determination is sought, and a prayer "for the determination of the title of the plaintiff against the adverse claims." (Code Civ. Proc., § 761.020.)

It has also long been held that a mortgagor cannot quiet title without discharging his debt, else the "cloud upon his title persists." (*Aguilar v. Bocci* (1974) 39 Cal.App.3d

3

475, 477–478 (*Aguilar*), citing *Burns v. Hiatt* (1906) 149 Cal. 617, 621-622 ["As long as the obligation to pay the debt exists, it is not equitable that the mortgagor should have relief against the mortgage given to secure the same, and such relief can be given only on condition that he discharges the obligation."]; see also *Booth v. Hoskins* (1888) 75 Cal. 271, 276.) The mortgagor may remain in possession, but cannot clear his title without satisfying his debt. (*Aguilar*, *supra*, at pp. 477–478.)

This rule recognizes that quiet title "is the relief granted once a court determines that title belongs in plaintiff. . . . In other words, in such a case, the plaintiff must show he has a substantive right to relief before he can be granted any relief at all." (*Leeper v. Beltrami* (1959) 53 Cal.2d 195, 216.) "It is thoroughly settled . . . that a plaintiff in an action to quiet title must depend on the strength of his own title and not on the weakness of the title of defendants; that if he fails to prove title in himself he cannot recover." (*Swann v. Carson* (1943) 56 Cal.App.2d 502, 504; see also *Ernie v. Trinity Lutheran Church* (1959) 51 Cal.2d 702, 706.)

Some cases in the wake of the recent wave of foreclosures have continued to apply this rule—borrowers with delinquent loan obligations may not "quiet title against a secured lender without first paying the outstanding debt on which the mortgage or deed of trust is based." (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86.) This is so even if the borrower claims the lender has no right to foreclose. (*Ibid.*) "Allowing plaintiffs to recoup the property without full tender would give them an inequitable windfall, allowing them to evade their lawful debt." (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 526; see also *Gavina v. Smith* (1944) 25 Cal.2d 501, 506 ["One who violates his contract cannot have recourse to equity to support that very violation."].)

However, the tender rule is subject to exceptions, and other recent foreclosure cases have excused tender in some contexts. (See, e.g., *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1100–1101 [holding tender not required in connection with

4

postsale wrongful foreclosure claim, and suggesting same for postsale quiet title claim]; *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1053 [tender not required where injunctive relief sought on ground lender failed to follow foreclosure procedural requirements]; *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1255, 1280 [tender may be unnecessary where declaratory relief sought when "lender has not yet foreclosed and has allegedly violated laws related to avoiding the necessity for a foreclosure"]; *Onofrio v. Rice* (1997) 55 Cal.App.4th 413, 424 [tender not required in connection with postsale claim for rescission of trustee's sale; tender not required where it would be inequitable, where validity of underlying debt is challenged, and where the debtor claims damages offsetting amount due]; cf. *Yvanova, supra,* 62 Cal.4th at p. 929, fn. 4 [noting "[t]ender has been excused when, among other circumstances, the plaintiff alleges the foreclosure deed is facially void, as arguably is the case when the entity that initiated the sale lacked authority to do so"].)

The Wrays have never alleged tender of the debt they owe. Instead, they maintain the tender rule should not apply to a quiet title claim brought to prevent foreclosure on the basis of allegations the foreclosing party has no interest in the debt whatsoever. We need not resolve this posited tender issue, however, as there is another threshold problem with the Wrays' lawsuit.

It is now well established that a defaulting borrower has no right, on a mere hope or hunch, to preemptively test in court whether an entity conducting a nonjudicial foreclosure in fact has authority to foreclose. (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 513 (*Jenkins*) [allowing a "preemptive" action "would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature"]; *Gomes, supra,* 192 Cal.App.4th at p. 1154 ["Nothing in the statutory provisions establishing the nonjudicial foreclosure process suggests that such a judicial proceeding is permitted or contemplated."]; see also *Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 743–744 [applying *Gomes* rule to a quiet title action to

5

prevent foreclosure]; *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1493 (*Rossberg*); *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82–83; *Robinson v. Countrywide Home Loans, Inc.* (2011) 199 Cal.App.4th 42, 46.)  In *Yvanova*, the Supreme Court expressly commented it was not disapproving "[t]his aspect of *Jenkins*, disallowing the use of a lawsuit to preempt a nonjudicial foreclosure" in ruling on "a borrower's standing to challenge an assignment in an action seeking remedies for wrongful foreclosure."  (*Yvanova, supra,* 62 Cal.4th at p. 933, italics omitted; see *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 815.)

The comprehensive statutory framework governing nonjudicial foreclosure sales is intended to be exhaustive.  (*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440.)  A borrower cannot halt the nonjudicial foreclosure process with boilerplate allegations and thereby put the burden on the foreclosing entity in every case to establish in court its right to proceed with a nonjudicial foreclosure.  (*Jenkins*, *supra*, 216 Cal.App.4th at pp. 512, 515.)  A "preemptive" cause of action " 'would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures.' " (*Id.* at p. 513, quoting *Gomes*, *supra*, 192 Cal.App.4th at p. 1155.)  Here, for example, the Wrays have remained in their home since 2012—nearly four years—without making any loan payments.

While *Gomes* suggests a borrower may be able to pursue preemptive declaratory relief if he or she can "identif[y] a *specific factual basis* for alleging that the foreclosure was not initiated by the correct party" (*Gomes*, *supra*, 192 Cal.App.4th at pp. 1155–1156), the Wrays' pleaded allegations, and those they proposed for the first time at oral argument, are not sufficiently specific to come within any exception to *Gomes*.

The allegation in the operative complaint that Washington Mutual "disposed of its interest" in the loan "in 2005," in and of itself, does not come close to providing a

6

sufficient factual basis for a preemptive suit. At oral argument, counsel proposed further alleging that Washington Mutual disposed of the loan prior to 2008 (when the FDIC and Chase signed the purchase and assumption agreement) and so could not have transferred the loan to the FDIC in 2008 and on to BofA—because the loan "*may* have gone either into a securitized trust or to the depositor." Such speculation does not advance the sufficiency of their complaint. (See *Cypress Semiconductor Corp. v. Maxim Integrated Products, Inc.* (2015) 236 Cal.App.4th 243, 262 ["[A]n allegation that something 'apparently' happened is speculative on its face. It has no place in a pleading, as it is pregnant with the admission that it may not have happened at all."]; see also *Gomes*, *supra*, 192 Cal.App.4th at pp. 1158–1159.)

The alleged FOIA correspondence with the FDIC also does not support a preemptive suit. The FDIC's response—that it had no records pertaining to the Wrays' loan—is by no means an "admission," as the Wrays claim, that the FDIC never transferred the loan. The Wrays' letter sought and the FDIC's response addressed only the FDIC's *possession* of documents. Furthermore, this subject was addressed in the purchase and assumption agreement between FDIC and Chase, which was properly a matter of judicial notice. That agreement required *Chase* to take on the failed bank's loan records and assigned *Chase* the primary responsibility for preserving records and responding to official record requests. Thus, the Wrays' assertion that the FDIC's correspondence indicates a failed transfer is, again, unfounded speculation.

At oral argument, counsel stressed an asserted contradiction between two of the judicially-noticed documents—the 2008 purchase and assumption agreement and the 2012 recorded assignment. The 2008 agreement, the Wrays claim, shows the FDIC assigned their loan to Chase in 2008. The 2012 assignment states, in the present tense, that it is effectuating an assignment to BofA from the FDIC, by its attorney-in-fact Chase, and not from Chase directly. The Wrays postulate the FDIC had nothing to assign in 2012 because the 2008 agreement had already transferred its interest in the loan to Chase.

7

However, section 9.2 of the 2008 agreement expressly contemplates the FDIC and Chase would cooperate in recording *future* assignments as necessary to effectuate the agreement. The 2012 recorded assignment would fall within this provision.

Furthermore, a *recorded* assignment was not required to effectively transfer the loan to BofA. (See *Herrera v. Federal Nat. Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1506.) Here, Chase was the attorney-in-fact responsible for the 2012 recorded assignment to BofA. Chase is a defendant in this lawsuit, and Chase has consistently disclaimed any ownership interest in the Wrays' $2.1 million debt and agreed BofA is the entity with an interest in the loan and authority to foreclose. It short, all the relevant financial institutions are joined in this action, and the banks all agree—and the documents support—that BofA has the right to foreclose. The Wrays, in turn, have not offered any specifics as to how the posited contradiction in the two documents would lead to some third party, about whom they can only speculate, having the true right of foreclosure.

Given these circumstances, we conclude that even the Wrays' eleventh-hour effort at oral argument to augment their allegations is insufficient to state a preemptive wrongful foreclosure claim. Ultimately, we have a $2.1 million loan to the Wrays, an assignment of the Wrays' loan to BofA, a notice of default on BofA's behalf, and notice of trustee's sale. There are no sufficiently specific allegations that call this series of events into question, and the Wray's speculation cannot reroute this nonjudicial foreclosure into the court system. (See, e.g., *Rossberg*, *supra*, 219 Cal.App.4th at p. 1493.)

### DISPOSITION

The judgment is affirmed.

_____

Banke, J.

We concur:


_____

Humes, P. J.


_____

Margulies, J.