[No. 3,376.]

MARY ANN FLEGE v. C. T. GARVEY AND GEORGE P. NOONAN, GUARDIAN OF HENRY FLEGE.

47 371
78 312

47 371
99 49

47 371
102 207

ALIENATION OF HOMESTEAD.—The estate held by a husband or wife in a .homestead, cannot be alienated by the voluntary act of either or both of the parties, except in the manner provided by the statute in force at the time.

CONVEYANCE OF HOMESTEAD.—The conveyance by which the title to a homestead is transferred must be signed by both husband and wife, if the wife resides in the State, and acknowledged by her in the manner of a conveyance of her separate estate.

IDEM.—The Statute has made no provision for the sale of a homestead in case of the lunacy, civil death, or imprisonment of either husband or wife.

SALE OF HOMESTEAD BY GUARDIAN OF INSANE HUSBAND.—If the husband becomes insane, and a guardian is appointed by the Probate Court, the guardian has no power to sell the homestead acquired by the husband and wife before the husband became a lunatic.

IDEM.——If the husband becomes insane, and a guardian is appointed by the Probate Court, who petitions the Court for power to sell the homestead, the Court has no jurisdiction over the wife's interest in the homestead, even if it appoints an attorney to represent her, and he consents to an order of sale; and a sale made by the guardian, by order of the Probate Court, conveys no title to the purchaser.

WHEN WIFE IS NOT ESTOPPED FROM RECOVERING HOMESTEAD. —The facts, that after a declaration of homestead had been filed the husband became insane, and a guardian was appointed for him by the Probate Court, and on the petition of the guardian said Court made an order that the homestead be sold to pay the expenses of the wife and children, and that after the sale the wife received a part of the proceeds of the same, and consented that an attorney be appointed to represent her in the Probate proceedings, do not estop the wife from afterwards recovering possession of the homestead from the purchaser at the guardian's sale.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

Ejectment to recover one hundred and fifty acres of land near Petaluma, Sonoma County. The land was sold by Charles Hunt, the guardian of Henry Flege, the husband of the plaintiff, to Jesse Hill, for the sum of $4,100. On the trial, the defendants offered to prove that the plaintiff received from the guardian a large proportion of the purchase money, but the Court, on the objection of the plaintiff, ruled out the testimony. The defendants also offered to prove that the plaintiff left the demanded premises before the sale, and had not been living on them since, for the purpose of showing that she had abandoned the homestead. The Court ruled out the testimony. The defendant Garvey was the tenant of Hill, the purchaser, and defendant Noonan was the guardian of Flege, having succeeded to Hunt, who had been removed. Hill paid all the purchase money.

The guardian, in his petition for the sale of the demanded premises, represented that Flege owed debts, that his family were in want, and that there was no property remaining, other than the land which the petitioner asked to have sold. The Probate Court found these statements true.

The plaintiff recovered judgment in the Court below, and the defendants appealed. The other facts are stated in the opinion.

*E. D. Sawyer* and *William Ross*, for Appellants.

The object of the Homestead Act is to prevent a sale of the homestead, by either husband or wife, without the consent of the other, or a forced sale on final process, for any debt or liability of either or both parties.    In other words, the sole object of the Act is to protect each family in its home.    (*Gregg* v. *Bostwick*, 33 Cal. 228.)

A shelter from pursuing creditors is a good thing, but there is no shelter from the pursuits of hunger.    Food and raiment are more necessary for the protection of the body than a palace to shelter it.    Hence the law, in its humanity, has given the Probate Courts power to sell the estate for the maintenance and support of the ward and his family. (Bel. Pro. Prac.', Secs. 352, 355 and 356; *Hickey* v. *Wilbert*, 8 Gray, 432.)

Sections 352 and 355 of the Probate Act give the guardian authority to sell any estate of the ward for the support of himself and his family.    This statute must be construed in connection with the Homestead Act.

The husband being insane, his influence, presumed to exist at common law over the wife, had ceased; and she, during that time, acted as a *femme sole*, and, having consented to the sale by the Probate Court, is estopped from raising the homestead question at any subsequent time.

The doctrine is well settled that neither infancy nor coverture will constitute any excuse for conduct which in other persons would, as regards purchasers for a valuable consideration, be deemed unjust and fraudulent.    (*Wright* v. *Arnold*, 14 B. Monroe, 513; *Davis* v. *Tingle*, 8 B. Monroe, 543.)

*A. W. Thompson*, for Respondent.

The wife may maintain this action.    (Practice Act, Sec. 7.)    It is the present right of possession which is the subject of the action of ejectment.    (*Ortman* v. *Dixon*, 13 Cal. 33; *Marshall* v. *Shafter*, 32 Cal. 176.)    The wife has, at all times, this right to the possession of the homestead.    (*Taylor* v. *Hargous*, 4 Cal. 268).

No action by the Probate Court or guardian, could divest her of this right. Being a married woman she could not be sued. (Bright on Husband and Wife, 69, *et seq.* Clancy's Rights of Married Women, 54, *et seq.*) By the authorities, last above cited, it also appears that insanity is not "civil death," and although the head of the family, and as such, entitled to the possession of the homestead, (*Gambette* v. *Brock*, 41 Cal. 78,) she is not a *femme sole*.

She had an absolute estate in the land; viz, by the homestead declaration, acting as a conveyance, she became, with her husband, a joint tenant thereof. (Homestead Act, Sec. 1; 1st Hittell, Sec. 3,541; *Barker* v. *Babel*, 36 Cal. 14–24; 1 Bright, H. & W. 25.) The Legislature may, and it is in its province, to prescribe how an estate may be created, (*Lies* v. *Le Diablar*, 12 Cal. 330) and also to direct the mode by which a party may be divested of an estate. (Id.)

The Legislature has declared the manner in which married women may convey their interests in land, and this mode of conveyance is not followed in this case. There was no abandonment of the homestead. (*Holden* v. *Pinney*, 6 Cal. 234; *Moss* v. *Warner*, 10 Cal. 297; *Lies* v. *Le Diablar*, *supra*; *Taylor* v. *Hargous*, 4 Cal. 268; Sec. 2 of Homestead Act, 1 Hittell's Dig. 3,542.)

The wife is in no manner estopped. (*Mahoney* v. *Van Winkle*, 21 Cal. 553.) The purchaser should have informed himself as to what title he bought. (*Martin* v. *Zellerbach*, 38 Cal. 300.) The Probate Court has no jurisdiction to try title. (Belknap's Probate, p. 22, Sec. 63; *Saking* v. *Denning*, 6 Paige, 95.) The homestead is no part of the estate over which the Probate Court has power. (*Estate of Orr*, 29 Cal. 101.)

Adverse to this proposition (that neither the Probate Court or the guardian could divest the wife of her title) counsel for defendant cite *Hickey* v. *Wilbert*, 8 Gray, 432. The Homestead Law of Massachusetts differs from that of California in the material circumstance that it recognizes no estate in the wife, regards the husband as the owner of the homestead, and although some restrictions are placed upon his power of alienation without her consent manifested

by deed, the general effect is to leave the estate subject to his control, his disposition by will, part of his estate after death, and, as such, subject to the jurisdiction of the Probate Court. (Secs. 8, 12, and 14, of Homestead Act of Massachusetts.)

By the Court, RHODES, J.:

The plaintiff and her husband, Henry Flege, on the tenth day of December, 1860, made, acknowledged and filed a declaration of homestead, appropriating for that purpose the premises in controversy. In 1867, Henry Flege became insane, and a guardian of his person and estate was appointed by the Probate Court of Sonoma County; and in 1868, the guardian filed in that Court a petition for the sale of the land of Henry Flege, who was then, and still remains, insane; and such proceedings were had that the land was ordered to be sold, and it was afterwards sold by the guardian to the defendant. It having been discovered that the description of the land in the petition and deed, and the intermediate orders, was defective, the Probate Court, upon the petition of the defendant, ordered a new deed to be executed.

The plaintiff, for recovery, relies on the declaration of homestead, contending that the Probate Court has no authority in a case like the present, to order the homestead to be sold. The defendant relies upon the guardian's sale, and contends that the plaintiff is estopped to deny its validity, because she knew of the pendency of the proceedings in the Probate Court, urged the sale, and received from the guardian a portion of the proceeds thereof, and appropriated the same to the support of herself and her children.

The Homestead Act, as amended in 1860 (Stats. 1860, p. 311), provides that from and after the filing for record of the declaration of homestead, the husband and wife shall be deemed to hold the homestead property as joint tenants, that is to say, joint tenants, subject to the qualification and modifications laid down in the Act. The precise interest or estate which the wife acquires, or which either party holds

therein after the filing of the declaration of homestead, has never been defined; and the opinion in *Barber* v. *Babel*, 36 Cal. 14, indicates that the terms of the common law are inadequate to afford an accurate definition of the wife's estate. But whatever may be the nature of the estate which the husband and wife severally hold in the homestead property, the doctrine is well established that the property cannot be alienated by the voluntary act of either or both of the parties, unless it be done in conformity to the statute— the statute in force at the time of the attempted alienation. The second section of the Act, as amended in 1862, (Stats. 1862, p. 519) provides that the alienation, conveyance, declaration of abandonment, etc., shall be executed by the husband and also by the wife (if she be a resident of the State), and be acknowledged by her in the same manner as a conveyance of her separate real estate is required to be acknowledged. The statute has also provided for the disposition of the homestead property upon the death of the husband or wife, but no express provision is made in respect to its alienation or disposition in any manner in case of the lunacy, civil death or imprisonment of either party. The statute, as already remarked, requires the conveyance by which the title is to be transferred by the act of the parties, to be executed by both husband and wife, provided the wife be a resident of the State. This is the only proviso furnished by the statute, and the Court has no power to interpolate further provisos, by which the execution of the deed by the wife may, in certain other contingencies, be dispensed with. It is very apparent that it might be to the best interests of the parties, in some instances—as in case of the insanity, or the civil death of the husband or wife— to permit the property to be sold and conveyed without requiring the joint deed of both; but the Court cannot supply the defect in the statute in that respect.

A guardian is but a representative of his ward, and has no greater power in the disposition of the property of his ward than the latter would have, if laboring under no disability; and clearly he has no power to dispose of the estate of the wife of his ward. There is nothing in the statute

prescribing the duties of guardians, tending to the conclusion that such authority was intended to be granted. We are therefore compelled to hold that the deeds executed by the guardian of Henry Flege did not transfer the title to the homestead.

There is nothing in the case, either in the evidence admitted or that which was offered, which amounts to an estoppel as against the plaintiff. The Probate Court had no jurisdiction of her estate in the homestead; and its orders were without effect upon her interest in the property. The appointment by the Court of an attorney to represent her was nugatory; and his consent that the property be sold for the payment of the debts of the estate, and the maintenance and education of the minor children of the ward, was destitute of all effect upon her. The purchaser at the guardian's sale paid the purchase money to the guardian, but he had no control over, or responsibility for, its application by the guardian; and of course cannot aver that in making the purchase he was influenced in any manner by the subsequent application of the purchase money. Besides this, he was not ignorant of the true state of the title, for the record of the declaration of homestead imparted notice to him, and he will be deemed to have purchased with full notice of the rights of the plaintiff in the premises. The matters relied upon do not amount to an estoppel *in pais* within the definition given in *Davis* v. *Davis,* 26 Cal. 23; *Boggs* v. *Merced M. Co.* 14 Cal. 279, and many other cases in this Court; nor, for the reasons already given, do the proceedings in the Probate Court amount to an estoppel by matter of record, as against the plaintiff.

Judgment and order affirmed.