[S. F. No. 4844. In Bank.—June 29, 1909.]

## LUIS RAGGIO et al., Appellants, v. FREDERICKA PALMTAG et al., Respondents.

MORTGAGE OF HOMESTEAD—DEATH OF HUSBAND—INSUFFICIENT CLAIM AGAINST ESTATE—PROBATE SALE OF HOMESTEAD TO MORTGAGEE—MORTGAGEE IN POSSESSION.—Where a mortgage was executed by a husband and wife on land a part of which was subject to a homestead declared by him, and upon the death of the husband, an insufficient claim on the mortgage indebtedness was allowed by his administrator and approved by the court, and thereafter and subsequent to the death of the wife, under a probate sale in his estate, the entire land was sold subject to the mortgage to the mortgagee, the

latter becomes a mortgagee in possession, and in an action by the successors in interest of the wife to quiet their title to and recover possession of the land embraced in the homestead, the mortgagee may set up the mortgage indebtedness and have a foreclosure of the mortgage as to the entire mortgaged premises.

ID.—TERMINATION OF HOMESTEAD ON DEATH OF SURVIVING WIFE—SUBSEQUENT FORECLOSURE WITHOUT PRESENTATION OF CLAIM.—Upon the death of the surviving wife, the homestead, the title to which had vested in her upon the death of her husband, ceased to exist, and the mortgagee then had the right, under section 1500 of the Code of Civil Procedure, to foreclose on the entire mortgaged property, without the presentation of a claim against the estate of the wife, upon waiving recourse against any other property of her estate. In such action, the heirs of the wife have not any right, under section 1475 of that Code, to have the property other than the land on which the homestead had been declared first applied to the payment of the mortgage indebtedness.

ID.—DEFENDANTS HAVING INTERESTS SUBJECT TO MORTGAGE—PLEADING —EVIDENCE OF PRIORITY.—Where the complaint to foreclose a mortgage alleges that certain defendants have or claim to have some interest or estate in the mortgaged premises, but that such claims or interests are subject to the lien of the mortgage, and the defendants by their answer merely deny that their claims are subsequent thereto, it is incumbent upon them to offer evidence as to their priority. Upon their failure so to do, they cannot on appeal complain of a finding against them.

ID.—CLAIM AGAINST ESTATE—ABBREVIATION OF WORD INTEREST.—A claim against the estate of a deceased person, for a specified amount "& int.," of which the approval by the administrator and the allowance by the court were both expressed in the same manner, using the abbreviation "int.," should be construed as presented, allowed, and approved for interest, including interest accruing after its allowance.

ID.—IDENTIFICATION OF MORTGAGE IN CLAIM.—The provisions of section 1497 of the Code of Civil Procedure, regarding the reference to the record of the mortgage, in the statement of the claim secured thereby when presented against the estate of a deceased person, are enabling and not restrictive or exclusive. Any other mode of statement which fully informs the personal representative of the deceased of the terms of the mortgage is sufficient.

ID.—ORIGINAL NOTE AND MORTGAGE PRESENTED WITH CLAIM.—Where the original note and mortgage on which a claim against the estate of a deceased person is based is inclosed in an envelope with the claim at the time of its presentation to the administrator for allowance, any insufficiency in the formal claim in its identifying references to the mortgage, or clerical inaccuracy in its description of the mortgaged premises, is cured.

APPEAL from a judgment of the Superior Court of San Benito County. M. C. Sloss, Judge presiding.

The facts are stated in the opinion of the court.

Briggs & Hudner, for Appellants.

H. W. Scott, and F. H. Gould, for Respondents.

MELVIN, J.—In 1868 Luis Raggio made a declaration of homestead upon the southwest quarter of section 4 in township 13 south of range 4 east, Mt. Diablo base and meridian, containing 160 acres of land. The document was duly recorded in Monterey County and was transcribed according to law in the records of San Benito County after that county was created. In December, 1894, Luis Raggio and Maria Ynezia Raggio, his wife, mortgaged said land, together with other lands adjoining, making in all about 475 acres, to Fredericka Palmtag, to secure the payment of a certain promissory note of four thousand dollars, executed by both of them, payable four years after date, with interest at the rate of ten per cent per annum, compounding semi-annually.

In 1895 Luis Raggio died leaving as his survivors his wife, Maria Ynezia Raggio, several children and the children of a deceased daughter.

A son, Luis Raggio, one of the plaintiffs in this action, and William Palmtag were duly appointed and qualified as administrators of the estate. They filed an inventory of the property, including the tract described in the declaration of homestead, but failed to mention the fact that the homestead estate existed. Within the time prescribed by law, however, Fredericka Palmtag presented a purported claim based upon her note and mortgage. This was allowed by the administrator and approved by the court.

In October, 1896, Maria Ynezia Raggio died, leaving the same surviving children and grandchildren as did her husband, Luis. In February, 1897, after her death, the administrators of Luis Raggio's estate obtained an order of court to sell all the property of the estate, which consisted solely of the real estate subject to the mortgage of Fredericka Palmtag. This land was finally sold to the mortgagee for the sum of

$5318, being $218 in excess of the amount of her claim. She was induced to make this bid by the administrators, as the estate owed $218 more than the money on hand. The real value of the property as found by the court was, at that time and at the time of the trial of this action, three thousand dollars.

In February, 1899, this action was commenced by Luis Raggio who had acquired all of the interests of his brothers and sisters. He was joined in the action by his minor nephews and nieces, represented by their guardian. Defendant Johnson was a tenant under Fredericka Palmtag and it is not necessary for the purposes of this case to discuss his interest.

Defendant Palmtag answered and by cross-complaint set up the existence of her note and mortgage and the proceedings in the estate of Luis Raggio, deceased. She prayed that the note and mortgage be restored and reinstated and that the mortgage be foreclosed. Judgment was given in favor of defendant and cross-complainant. This appeal is from the judgment and from an order denying a new trial.

The trial court found that Fredericka Palmtag was a mortgagee in possession and the most serious problems in this case arise out of the discussion of this finding. Appellants contend that the claim presented against the estate of Luis Raggio, deceased, by Fredericka Palmtag was so deficient as to be a nullity. Section 1497 of the Code of Civil Procedure prescribes the requisites for such a claim as follows: "If the claim or any part thereof be secured by mortgage, or other lien which has been recorded in the office of the recorder of the county in which the land affected by it lies. it shall be sufficient to describe the mortgage or lien, and refer to the date, volume and page of its record. If, in any case, the claimant has left any original voucher in the hands of the executor or administrator, or suffered the same to be filed in court, he may withdraw the same when a copy thereof has been already, or is then, attached to his claim. A brief description of every claim filed must be entered by the clerk in the register, showing the name of the claimant, the amount and character of the claim, rate of interest, and date of allowance."

In the purported claim here considered the property is not accurately described; the date of the mortgage is given but

not the book and page of the record in which it is copied; and although the note is set out in the claim, the names of the mortgagors and mortgagee are not given. In relation to this claim the court below found:—

"That at the time of the presentation of the said claim described in said cross-complaint, and presented with and accompanying the same, said Fredericka Palmtag did present and leave with the said administrators of the estate of Luis Raggio deceased, the original note described in said cross-complaint and the original mortgage described and set out in said cross-complaint, and that there was at that time, indorsed on said mortgage, the place, date, volume and page of its record in the records of San Benito County; that except as herein found said claim did not refer to the date, volume or page of such record.

"That at the time of the sale of the real estate described in, and set forth in the answer and cross-complaint of Fredericka Palmtag by said administrators, to defendant, Fredericka Palmtag, plaintiff, Luis Raggio, then one of the administrators of the estate of Luis Raggio, deceased, had actual notice that the homestead, described in the cross-complaint of Fredericka Palmtag herein, had been declared upon the property therein described."

Appellants' theory is that the jurisdictional prerequisites of the presentation of a claim in due form having failed, the lien of the mortgage was forever lost, citing *Estate of Turner,* 128 Cal. 388, [60 Pac. 967], and other cases. Whatever might be the force of such a theory in a direct appeal involving the order of sale or other matters in the estate of Luis Raggio, deceased, we think that under the settled law in California, the respondent was properly found to be a mortgagee in possession. It has been held that where the mortgagee becomes the purchaser at a void foreclosure sale and enters into occupation of the property under the deed improperly executed and delivered by the commissioner, he is nevertheless a mortgagee in possession and the mortgagor's assignee cannot quiet his title to the property against such mortgagee without paying or offering to pay the debt for the security of which the mortgage was created. (*Burns* v. *Hiatt,* 149 Cal. 621, [117 Am. St. Rep. 157, 87 Pac. 196].) The same rule applies even when the debt secured by the mortgage is barred by the statute

CLV Cal.—51

of limitations. (*Brandt* v. *Thompson*, 91 Cal. 461, [27 Pac. 763]; see, also, *Spect* v. *Spect*, 88 Cal. 437, [22 Am. St. Rep. 314, 26 Pac. 203]; *Booth* v. *Hoskins*, 75 Cal. 276, [17 Pac. 225]; *Grant* v. *Burr*, 54 Cal. 298; *Zellerbach* v. *Allenberg*, 99 Cal. 69, [33 Pac. 786]; *Peshine* v. *Ord*, 119 Cal. 311, [63 Am. St. Rep. 131, 51 Pac. 536].)

In *Ions* v. *Harbison*, 112 Cal. 260, [44 Pac. 572], this court held that a purchaser at a probate sale cannot be deprived of possession by the grantee of the surviving mortgagor without full payment of the debt, even though certain proceedings preliminary to the sale were not in accordance with statutory requirements. That case presents some resemblance to this. In that case, as in this, the homestead property had been mortgaged and the title to the homestead vested in the surviving husband upon the death of his wife, subject, however, to the mortgage which had been executed by both husband and wife to secure payment of a certain promissory note. The property was sold to satisfy the mortgage and to defray expenses of administration. In that case the court says: "Under these circumstances the plaintiff contends that the property in question was not subject to administration, and that therefore the court 'had no jurisdiction of the subject-matter administered upon.'

"But section 1475 of the Code of Civil Procedure provides that, 'if the homestead selected and recorded prior to the death of the decedent be returned in the inventory appraised at not exceeding five thousand dollars in value, or was previously appraised as provided in the Civil Code, and such appraised value did not exceed that sum, the superior court must, by order, set it off to the persons in whom title is vested by the preceding section'; and also provides for the payment of existing liens thereon. It is therefore clear that the court has jurisdiction over the homestead for some purposes; and it seems to follow that if the court, from ignorance of the fact that it was a homestead, or by inadvertence, or mistake of law, made an order not authorized by the statute, its proceedings, however erroneous, would not be without jurisdiction, and hence would be valid as against a collateral attack." In that case, plaintiff, a grantee of the surviving husband, stood in the same position as that occupied by the plaintiffs here. There, as here, it was asserted by appellant that the order of

sale was made without the proper performance of acts giving the court jurisdiction. The requirements of section 1537 of the Code of Civil Procedure were not strictly followed. In commenting upon this objection the court said:—

"There were many errors and irregularities in the proceeding, but, as was said in *Burris* v. *Kennedy*, 108 Cal. 331, [41 Pac. 458], 'if the court had jurisdiction errors in the exercise of it, however gross, would not render the decision invalid.'" Appellants' counsel frankly admit the force of the rule as announced in *Ions* v. *Harbison*, but insist that the doctrine of that case cannot be upheld. We can see no reason for recalling or changing anything in that case, particularly in view of the conclusions reached in the decision of the later case of *Burns* v. *Hiatt*, 149 Cal. 621, [117 Am. St. Rep. 157, 87 Pac. 196]. Nor is the force of the decision in *Ions* v. *Harbison* abated by the finding here that the plaintiffs became the owners of the fee. In that case it was directly held that the title to the homestead vested in the surviving husband upon the death of his wife, subject to the lien of the mortgage, and the source of plaintiffs' title was created in identically the same manner. The lower court correctly held that Mrs. Palmtag was a mortgagee in possession and it is therefore unnecessary to consider in detail the suggestion of respondents that plaintiff Luis Raggio, having as administrator approved Mrs. Palmtag's claim and having participated in the transaction whereby she was induced to pay $218 in money and to accept three thousand dollars worth of land in satisfaction of a legitimate claim of more than five thousand dollars, was estopped in a court of equity from asserting a legal title to her prejudice. We think, however, that as to him there is merit in this contention and whether the estoppel would extend only to his one-sixth interest in his mother's estate (as his counsel declare it could only do in any event), or to the after-acquired additional four sixths as well, he can hardly be looked upon as a suitor to be highly considered by a court of equity.

The title to the mortgaged property having vested in the widow of Luis Raggio, deceased, on his death, subject to the mortgage, it follows that Mrs. Palmtag had the right to foreclose her mortgage upon that property. This she proceeded to do under section 1500 of the Code of Civil Procedure,

waiving recourse against any other property of the estate of
Maria Ynezia Raggio, deceased. Appellants contend that such
suit could not be brought without the presentation of a claim
against the estate. It is admitted that the homestead ceased
to exist upon the death of Mrs. Raggio (see *Estate of Fath,*
132 Cal. 609, [64 Pac. 995]). But appellants maintain that
inasmuch as, under section 1485 of the Code of Civil Proce-
dure the homestead descends from the successor thereto and
is taken by her heirs having "all the rights and benefits con-
ferred by law" upon such "successor," therefore the heirs had
the same right conferred upon them as in cases where the
homestead does not cease to exist upon the death of one of the
parents, to have the property other than the homestead first
applied to the payment of the debt that was secured by the
mortgage. But when the homestead ceased to exist there
could obviously be no necessity for the application of section
1475 of the Code of Civil Procedure. If we grant that the
property which had been the homestead could not under
section 1485 of the Code of Civil Procedure be subjected
to the ordinary debts of the estate, nevertheless it might, under
section 1500 of the Code of Civil Procedure, be subjected to
foreclosure of a lien upon that very property, by a waiver of
recourse against the other assets of the estate. During her
lifetime Mrs. Raggio might have mortgaged the homestead
which had come to her by succession without any existing
liens; and the mortgage might have been satisfied out of the
very property upon which she had voluntarily placed it.
Having joined in the mortgage, before this succession which
took place upon her husband's death, she stood in the same
position which she would have occupied had the encumbrance
been placed upon the property by her single act after his
demise. By the application of section 1500 of the Code of
Civil Procedure the property is disposed of just as it would
have been if foreclosure had occurred during her lifetime.
If, on the contrary, we should hold that section 1475 of the
Code of Civil Procedure must be followed, we would be
giving to her heirs greater privileges than she enjoyed in
her lifetime, instead of the same "rights and benefits con-
ferred by law."

In the cross-complaint there was an allegation in the usual
form that N. C. Briggs and J. L. Hudner had or claimed to

have some interest or estate in the premises described in Mrs. Palmtag's mortgage, but that such claims or interests were subject and subordinate to the Fredericka Palmtag mortgage and the lien thereof. In their answer to the cross-complaint they merely deny that their claims are subsequent to those of the cross-complainant. The rights of Messrs. Briggs and Hudner do not seem to have been litigated. No specific claim or lien or demand of any kind was set up by them either by pleading or in any other manner. We think that the issue demands that whatever rights they had should have been asserted by Messrs. Briggs and Hudner and proof as to the priority of their claims should have been introduced by them. Having failed to present any such proof, they cannot now complain of the finding against them. The demandant makes out a *prima facie* case when he proves the execution and delivery of the note and mortgage, and the other formal matters required by the statute. (2 Jones on Mortgages, sec. 1295; *Burridge* v. *Fogg,* 8 Cush. (Mass.) 183.)

In the case of *Foster* v. *Bowles,* 138 Cal. 451, [71 Pac. 495], there was an allegation in the complaint that one of the defendants had or claimed to have some "right, title etc." to said mortgaged lands. This averment was met by a denial of defendant in the answer. At the trial this defendant defaulted and as no proof was offered or made with respect to the allegations of the answer, these averments were found to be untrue, a finding which was sustained by this court. (See also *Sichler* v. *Look,* 93 Cal. 608, [29 Pac. 220].)

Objection is made to the amount of the judgment on the ground that interest was waived at the time of the presentation of the claim of Fredericka Palmtag against the estate of Luis Raggio deceased. The demand was for four thousand dollars "& int." The approval by the administrators and the allowance by the court were both expressed in the same manner, using the abbreviation "int." It is contended that this is a meaningless collocation of letters, not sufficient to support the demand, the approval, or the allowance. Section 186 of the Code of Civil Procedure provides that: "Such abbreviations as are in common use may be used, and numbers may be expressed by figures or numerals in the customary manner." The very form used in this demand has been recognized by the supreme court of Illinois as "beyond question

an abbreviation of the word 'interest.' " (*Belford* v. *Beatty*, 145 Ill. 414, [34 N. E. 254].) We think the lower court very properly recognized it as representing that word.

There is no merit in the contention that because the allowance of interest was made on August 13, 1895, no further interest could be claimed after that date. There is nothing in *Jones* v. *Walden*, 145 Cal. 523, [78 Pac. 1046], in conflict with this theory, nor does the case of *Consolidated Nat. Bank of San Diego* v. *Hayes*, 112 Cal. 75, [44 Pac. 469], announce any different doctrine. In the former case the claim itself was allowed for a small fraction of the original demand and that was held to be a rejection of the balance. In the latter case the allowance was for the principal only and that was held to be a rejection of the claim for *accrued* interest which barred its collection after the running of section 1493 of the Code of Civil Procedure without the commencement of suit.

There are no other specifications of error that require special attention.

The judgment and order are affirmed.

Henshaw, J., and Shaw, J., concurred.

ANGELLOTTI, J., concurring.—I concur in the judgment. I am of the opinion that it should here be held that there was a sufficient presentation of the mortgage claim against the estate of Luis Raggio, deceased, to save the rights of the mortgagee, and that it was not necessary to present any claim against the estate of Maria Ynezia Raggio.

Rehearing denied.

In denying a rehearing, the court in Bank rendered the following opinion on the twenty-ninth day of July, 1909:—

THE COURT.—The petition for a rehearing is denied. In response to the points therein presented we think it proper to give as an additional reason for the affirmance of the judgment, that stated in the concurring opinion of Justice Angellotti. The court below held, in effect, that the mortgage claim was duly presented for allowance against the estate of Luis Raggio, deceased. This was fully established by the findings

and also by the evidence, which is not contradicted, and which is somewhat more specific than the findings. The claim was properly verified. It attempted to state the contents of the mortgage, and the statement was amply sufficient to identify it, except for the fact that the names of the mortgagor and mortgagee were not given and that one of the parcels of land mortgaged was incorrectly described, the mistake being obviously a mere clerical inaccuracy. But the claim was presented to the administrator in a sealed envelope and with it were inclosed the original note and mortgage, mentioned in the statement of the claim. The provisions of section 1497 of the Code of Civil Procedure regarding the reference to the record of the mortgage, in the statement of a claim secured thereby are enabling and not restrictive or exclusive. The purpose of the reference is to afford means whereby the administrator may ascertain the terms of the mortgage and the land it covers, and the statute allows a mere reference to the record instead of the full statement of its terms, which might otherwise be necessary. It is plain that, although any other mode of statement which fully informs the administrator of the terms of the mortgage would be sufficient, the claimant did not, in the present case, make the required reference to the book and page of the mortgage record, but instead thereof she afforded much more satisfactory means of information of its contents. She inclosed, with the claim, the original note and mortgage, all being in the same envelope and sealed. This made the note and mortgage as effectually parts of the claim as if they had been attached or fastened thereto in the ordinary manner, and it gave the administrator full knowledge of its contents. This was the object to be attained by the citation to the record. It was thus fully accomplished by more satisfactory evidence and the presentation was complete. (*Estate of McDougald,* 146 Cal. 193, [79 Pac. 878].) The description of the land as set forth in the statement of the claim, did not purport to be anything more than a copy of the description contained in the mortgage, and the clerical error therein was completely controlled and corrected by the original mortgage which accompanied it. Such an error so entirely cured would not invalidate the claim.