[Civ. No. 6629.   Third Dist.   Apr. 16, 1942.]

CHARLES SELINGER, Respondent, v. LOUISE MILLY et al., Appellants.

Albert J. McGuire and M. M. Getz for Appellants.

Norman Elkington for Respondent.

HELD, J. pro tem.—This appeal is from an interlocutory decree entered in an action brought by plaintiff, Charles Selinger, to obtain a partition of certain real property in the city and county of San Francisco. An answer denying that plaintiff has any interest in the premises was filed; and by cross-complaint, the appellants sought to quiet title in themselves. The trial court adjudged plaintiff to be the owner of an undivided one-fifth interest in the premises, and appellants to be the owners of the remaining four-fifths interest. The latter, claiming title to the property to the exclusion of any interest in plaintiff, have appealed.

The record discloses that Jerome Milly and Louisa Milly were husband and wife, and that Albert J. Milly, Emil F. Milly, Louise Milly (now Rothenbusch), Annie Krueckel, and Jerome M. Milly were their children. Jerome Milly died on January 26, 1911, and Louisa Milly died on June 15, 1935. Emil F. Milly predeceased his mother, and left surviving two children, Dorothy and Jerome Milly. During coverture, Jerome Milly and Louisa Milly acquired the premises here involved as community property, and while they were the owners thereof, the husband, on February 23, 1889, selected the same as a homestead by a declaration duly executed and recorded. No conveyance or formal abandonment of the homestead was ever made by the spouses, and it is the contention of appellants that on the death of Jerome Milly, on January 26, 1911, title to the homestead premises vested absolutely in Louisa Milly, his surviving widow, subject to testamentary disposition by her on her death.

Section 1474, Code of Civil Procedure, then in force, provided that "If the homestead selected by the husband and wife, or either of them, during their coverture, and recorded while both were living, was selected from the community property . . . it vests, on the death of the husband or wife, absolutely in the survivor." (Stats. 1880, p. 88.) Section 1265, Civil Code, then also in force, provided that, "From and after the time the declaration is filed for record, the premises therein described constitute a homestead. If the selection was made by a married person from the community property . . . the land so selected on the death of either spouse, vests in the survivor." (Stats. 1909, p. 972.) These sections, being in force at the time of the death of Jerome Milly, determine the devolution of the homestead. (*Estate of Wright*, 98 Cal. App. 633 [277 Pac. 372]; *Patchett* v. *Webber*, 198 Cal. 440 [245 Pac. 422].) An order by the probate court setting apart the homestead to the survivor was held, in *Estate of Simonton*, 183 Cal. 53 [190 Pac. 442], to be "wholly unnecessary and ineffective," and in *Saddlemire* v. *Stockton Savings etc. Soc.*, 144 Cal. 650 [79 Pac. 381], to serve only to withdraw the premises from administration and from further consideration by the court. (11a Cal. Jur., p. 603.)

It is the contention of respondent that, though the homestead would ordinarily have vested in Louisa Milly, she, during her lifetime, was estopped, and appellants, being in privity with her, are now estopped from so claiming. Such estoppel, it is contended, arises out of the conduct of Louisa Milly, and the record in the probate proceedings of her husband, Jerome Milly. The latter left a will, whereby he gave to his widow a life estate in the residue of his estate, with remainder over to his children, including Albert J. Milly. The will was admitted to probate, and Louisa Milly was appointed executrix thereof. No order setting apart the homestead was sought or made, and no recognition given the homestead until some years thereafter when, in 1928, a petition by the surviving widow to have the fact of the death of Jerome Milly established, was filed under section 1723, Code of Civil Procedure, (now section 1170, Probate Code). A decree establishing the fact of death was entered on May 23, 1928.

During the administration of the estate of Jerome Milly, deceased, the executrix returned an inventory of the property thereof, and included therein, as a portion of her husband's

estate, the premises covered by the homestead declaration. In a petition for distribution of the residue of the estate, subsequently filed, she also included the homestead premises, and a decree of distribution was made accordingly on May 6, 1912. This decree purported to distribute to the surviving widow a life estate in the property, with remainder over to the five children, among them, Albert J. Milly.

On March 1, 1925, respondent loaned to Albert J. Milly the sum of $1,500.00, and received a promissory note therefor. On December 1, 1929, the note remaining unpaid, Albert J. Milly executed a renewal thereof for $1,914, the amount then due for unpaid principal and accrued interest. Prior to the execution of the renewal note, respondent had threatened suit on the original obligation unless the same were paid or security given. Albert J. Milly then represented to the respondent that he was the owner of an undivided one-fifth remainder interest in the residue of the estate of his father, Jerome Milly. As security for the payment of the obligation, he executed to respondent, with the renewal note, an assignment of such remainder interest. Subsequently, respondent brought suit to foreclose the lien created by said assignment; judgment was rendered in his favor; a sale of the property here involved was had, and commissioner's deed was issued to respondent, under which he now claims title to the one-fifth interest purportedly distributed to Albert J. Milly by the decree of distribution entered in the estate of his father.

Louisa Milly died testate. Her will devised the homestead to Dorothy Milly, Jerome Milly, Jerome C. Milly, Louise Rothenbusch, and Annie Krueckel, in the following proportions: One-ninth thereof to each of the first three named, and one-third thereof to each of the last two named. Albert J. Milly was not designated as a devisee under the will. Pending administration of the estate, Annie Krueckel assigned her interest therein in equal shares to Annette Krueckel and Frank Krueckel, Jr. On September 12, 1938, a decree of distribution was entered in the estate of Louisa Milly, deceased, purporting to distribute the homestead premises to Dorothy Milly, Jerome Milly, Jerome C. Milly, Louise Rothenbusch, Annette Krueckel and Frank Krueckel, Jr., the appellants herein, and they now claim title under the terms of that decree, to the exclusion of respondent.

The question arises now whether, on the death of Jerome Milly, the homestead premises vested in his surviving widow,

and, under the decree of distribution in her estate, passed to the appellants, or whether appellants, by reason of the conduct of their mother, and the decree of distribution in the estate of Jerome Milly, deceased, are estopped to claim through the homestead.

That the surviving widow may, by conduct, be estopped from claiming the homestead, is recognized in 11a Cal. Jur., p. 587, and that devisees, being in privity with the testator, are bound by such estoppel, is the rule. (21 C. J., p. 1118.) Estoppel, however, is not favored by the courts. (*Lorenz* v. *Rousseau*, 85 Cal. App. 1 [258 Pac. 690] ; *Hammond Lbr. Co.* v. *Weeks*, 105 Cal. App. 315 [287 Pac. 573].) Particularly is this true where the abandonment of a homestead is claimed. The statute provides an exclusive method by which an abandonment is accomplished. (Civil Code, sec. 1243.)

In *Flege* v. *Garvey*, 47 Cal. 371, the husband became insane after he and his wife appropriated certain premises as a homestead. A guardian of his estate was appointed. Thereafter, an order was made by the probate court directing the sale of the homestead, and it was sold by the guardian. Subsequently, the wife brought suit to recover the premises, relying on the declaration of homestead. Defendant claimed under the guardian's sale, and contended that the wife was estopped to deny its validity, because ''she knew of the pendency of the proceedings in the probate court, urged the sale, and received from the guardian a portion of the proceeds thereof.'' The Supreme Court there held that the deed of the guardian was invalid to transfer the title to the homestead, because of the statutory requirement that a conveyance of the homestead be executed by both husband and wife. Of the defendant's claim that the wife was estopped by her conduct and participation in the proceeds of the sale, the court said that these matters do not amount to an estoppel in pais, and that the proceedings in the probate court did not amount to an estoppel by matter of record. The same strict application of the statute was made in *Gagliardo* v. *Dumont*, 54 Cal. 496, where a homestead had been declared by husband and wife. The husband gave to another a power of attorney to sell all the real estate which belonged to him. Subsequently, the attorney in fact of the husband sold and conveyed the homestead premises, the wife joining in the deed. Thereafter, the wife died, and the husband brought an action against the claimant under the purchaser. The Supreme Court

held that on the death of the wife, the title to the homestead vested in the husband, and that he held as against the purchaser. In *Dixon* v. *Russell*, 9 Cal. (2d) 262 [70 P. (2d) 196], the wife recorded a homestead for the joint benefit of both spouses on community property of herself and her husband. Thereafter, she conveyed the premises to the husband, who executed to the wife a deed of trust to secure an indebtedness to her. In the deed, she expressly released and waived all rights under and by virtue of the homestead laws. Thereafter, she asserted a right in the property, and the husband brought an action to quiet title. The court held that the deed of the wife was ineffective to accomplish an alienation of the homestead, and that the waiver in the deed did not constitute an abandonment. It was there said:

"The appellant suggests that by her deed, the wife voluntarily surrendered her interest in the homestead and that she should now be held to have waived all claim to the premises. *Flege* v. *Garvey* [47 Cal. 371, 376], *supra*, and *Gagliardo* v. *Dumont* [54 Cal. 496, 499] *supra*, are directly to the point that there can be no surrender except in the mode prescribed by the statute. If there can be no surrender of the interest by such a deed, there could be no waiver of the right to assert the interest except by the manner prescribed in the statute."

To the same effect are *Hart* v. *Taber*, 161 Cal. 20 [118 Pac. 252], and *Williams* v. *Williams*, 170 Cal. 625 [151 Pac. 10], as well as *Rocha* v. *Rocha*, 197 Cal. 396 [240 Pac. 1010]. In the last cited case, there were involved homestead premises owned by Antonio Jose Rocha and Ventura L. De Rocha, husband and wife. The husband died, and it does not appear that proceedings were taken to adjudicate the fact of his death, nor was administration had upon his estate. After the husband's death, the widow executed a deed of the premises to her son Antonio, who, some years thereafter, sought to obtain a loan on the property, and then discovered that no proceedings had been taken of record to show that the homestead had vested in his mother as surviving spouse. He thereupon prayed for letters of administration on his father's estate, and, in the inventory, he returned the homestead premises as property of the estate. Proceedings were had, culminating in an order setting apart the premises to his mother as a homestead, and thereafter she executed a second deed to him. The heirs of the father, other than defendant, sought to recover the premises. It was their contention that

defendant Antonio was estopped to assert that the allegations of the petition for letters of administration and the inventory as to the ownership of the property did not truly state the facts. The Supreme Court held there was no estoppel arising out of such allegations.

Respondent herein, in support of his contention that appellants are estopped, cites *Ions* v. *Harbison*, 112 Cal. 260 [44 Pac. 1027], and *Raggio* v. *Palmtag*, 155 Cal. 797 [103 Pac. 312]. In the former case, one Bell and his wife had executed a mortgage to Flagg; thereafter, Mrs. Bell declared a homestead on the property. Subsequently, she died, and the husband was appointed administrator of her estate. A sale in probate was made to Harbison, the purchase price was paid to the administrator, and he expended the major portion thereof in the discharge of the mortgage debt. Thereafter, the husband, in his individual capacity, accepted $10 from Ions, the plaintiff in that action, for a quitclaim deed, and he brought suit to quiet title against Harbison, the purchaser at the probate sale. Judgment was rendered in favor of Ions in the trial court, and this, on appeal, was reversed. The Supreme Court cited section 1475, Code of Civil Procedure, and said that the probate court "had jurisdiction over the homestead for some purposes," but added:

"But conceding, for the sake of the argument, that the court had no jurisdiction, and that the sale was void, it would seem to be beyond question that Bell would have been estopped to claim title to the land as against the defendant, and, if so, the plaintiff claiming under Bell, with knowledge of the facts, is equally estopped. Bell asserted in a solemn judicial proceeding that the title to the property was in the estate of his deceased wife, and not in himself. He received the purchase money and applied it to the payment of the mortgage debt, which was a valid lien upon the land, for which he, as well as the estate, was liable, and to the payment of the funeral expenses and costs of administration which he had incurred, and, having conveyed the property to the defendant, put him in possession. There was no surplus arising from the sale. He was the sole beneficiary, and, upon respondent's theory, the sole owner. To retain these benefits resulting from the payment of the purchase money by the defendant, and, at the same time, recover the property from him, would be a fraud which a court of equity will not permit. He had full knowledge of all the facts affecting his title. His mistake was one of law, as was that also of the defendant;

but to permit Bell to retain the purchase money and the property, too, is to give him a very profitable relief from his mistake, while it would visit upon the defendant a severe penalty for the same mistake."

Of the plaintiff in that case, the court said:

"He was not a purchaser in good faith. The price paid for the quitclaim, though sufficient as a consideration between him and Bell, indicates very clearly that he was speculating in a small way upon the supposed misfortunes of another. He understood he was purchasing this lawsuit, which he commenced two days thereafter, and having had such enjoyment as it afforded, he can not reasonably complain if he gets no more."

In *Raggio* v. *Palmtag, supra,* a homestead vested in Maria Ynezia Raggio on the death of her husband, Luis Raggio, and plaintiff was appointed administrator of his estate. Prior to the husband's death, the spouses had executed a mortgage to defendant Palmtag. Subsequently, Mrs. Raggio also died, and thereafter the administrator of the husband's estate obtained an order of court to sell the homestead premises which constituted the entire estate. The mortgagee, Palmtag, bought the property for a sum in excess of the amount due on the mortgage note. When plaintiff brought his action, she, claiming to be a mortgagee in possession, sought to have her note and mortgage reinstated and restored, and granted a foreclosure. The court, in following the case of *Ions* v. *Harbison, supra,* as to jurisdiction, said: "We can see no reason for recalling or changing anything in that case, particularly in view of the conclusions reached in the decision of the later case of *Burns* v. *Hiatt,* 149 Cal. [617] 621 [87 Pac. 196, 117 Am. St. Rep. 157]." The latter case held that an action will not lie against a mortgagee in possession without paying or tendering the amount due on the mortgage. It is evident that the decision in *Raggio* v. *Palmtag* was largely influenced by the conclusions reached in *Burns* v. *Hiatt, supra.* Of the plaintiff in the Raggio case, the court said: "He can hardly be looked upon as a suitor to be highly considered by a court of equity."

We have here a case in no way comparable with either *Ions* v. *Harbison, supra,* or *Raggio* v. *Palmtag, supra.* There is no evidence here that Mrs. Milly ever made any representation to respondent to induce the latter to make a loan to Albert J. Milly, or that she received the slightest advantage from said

loan. There is no evidence that the original loan was made in reliance upon any interest that Albert J. Milly claimed in the estate of his father. When the renewal note and assignment were executed, an examination of the public records would have disclosed the declaration of homestead and the subsequent decree establishing the fact of the death of Jerome Milly. The respondent had the means of ascertaining the true state of the title prior to accepting the assignment as a condition to withholding suit on the original note. It has been held that where both parties have the same means of ascertaining the truth, there can be no estoppel. (*Jones* v. *Coulter,* 75 Cal. App. 540 [243 Pac. 487].) In *Eltinge* v. *Santos,* 171 Cal. 278 [152 Pac. 915, Ann. Cas. 1917A, 1143], the court said:

"The rights of plaintiff depended upon matters of record which were equally open to the knowledge of both the plaintiff and the defendant. 'An estoppel cannot exist where the knowledge of both parties is equal and nothing is done by the one to mislead the other.' " (Citing cases.)

In *Gioscio* v. *Lautenschlager,* 23 Cal. App. (2d) 616 [73 P. (2d) 1230], the court denied the application of the doctrine of equitable estoppel for the reason that the party against whom it was sought to invoke the doctrine had personally never received any benefit from the money paid by the purchaser, nor made any admissions or declarations, or done any act with the intention of deceiving the other party with regard to the title. The court there quoted with approval from *Davis* v. *Davis,* 26 Cal. 23 [85 Am. Dec. 157], as follows:

"In order to constitute an equitable estoppel with respect to the title of property, it must appear that the party to be estopped has made admissions or declarations, or done acts with the intention of deceiving the other party with regard to the title, or with such carelessness or culpable negligence as to amount to a constructive fraud, and that at the time of making the admissions or declarations, or doing the act, he was apprised of the true state of his own title, and that the other party was not only destitute of all knowledge of the true state of the title, but also of all convenient or ready means of acquiring such knowledge."

We conclude that upon the death of Jerome Milly, title to the homestead premises vested absolutely in Louisa Milly, his surviving widow; that the provisions of the decree of distribution in the estate of Jerome Milly, deceased, did not di-

vest her of that title; and that her conduct of the administration of the estate of her deceased husband and allegations made by her in that proceeding did not serve to create an estoppel as against her or those claiming under her.

In view of the conclusion we have reached that upon the death of Jerome Milly no interest in the homestead premises vested in Albert J. Milly, it is not necessary to consider the special defense of res adjudicata raised by respondent. The judgment in the action relied on as a prior adjudication, was to the effect that respondent had a lien "upon the portion of the remainder of both the real and personal estate of Jerome Milly, deceased, *which vested in said Albert J. Milly* upon the death of Jerome Milly, and which is directed by the decree of distribution made and entered in the matter of the Estate of Jerome Milly, deceased, on the 6th day of May, 1912, to be delivered upon the death or remarriage of Louisa Milly, now deceased, to said Albert J. Milly." It thus appears that the judgment affected only the estate which vested in Albert J. Milly, upon the death of his father, and, as the property here involved did not so vest, title thereto was not affected by the judgment in the prior action.

It is therefore ordered that the judgment be reversed, and the trial court is directed to enter judgment in favor of appellants, quieting their title to said premises in the proportion of an undivided one-third interest to Louise Rothenbusch, an undivided one-sixth interest each to Annette Krueckel and Frank Krueckel, Jr., and an undivided one-ninth interest each to Jerome Milly, Jerome C. Milly, and Dorothy Milly.

Thompson, Acting P. J., and Tuttle, J., concurred.