[Civ. No. 14702. First Dist., Div. One. June 1, 1951.]

Estate of FILIPPO CECALA, Deceased. THOMAS F. KILMARTIN, as Administrator with the Will Annexed, etc., Respondent, v. SARAH NASO, as Administratrix with the Will Annexed, etc., Appellant.

Rankin, Oneal, Luckhardt, Center & Hall, M. S. Hall, Foley, Foley, Andreuccetti & Foley and James W. Foley for Appellant.

O. H. Speciale for Respondent.

WOOD (Fred B.), J.—Sarah Naso, as administratrix with the will annexed of the estate of Filippo Cecala, has appealed from an order of the superior court which set aside certain

real property as a homestead to Thomas F. Kilmartin, as administrator with the will annexed of the estate of Rosaria Cecala.

Filippo and Rosaria Cecala were husband and wife. During their married life they acquired as community property a 15.775-acre parcel of land on Redmond Road, and an undivided one-fourth interest in a 23-acre parcel on Almaden Road, Los Gatos, California. On May 1, 1933, a declaration of homestead was filed on the Redmond Road property. Filippo died February 12, 1935, leaving surviving him his widow, Rosaria, and three children, Sarah Naso, Rosa Anzalone, and Rosario Cecala. The widow Rosaria offered for probate a will of Filippo dated September 11, 1933. On January 13, 1937, it was admitted to probate and Rosaria was appointed executrix. Filippo in his will, after directing payment of his debts and funeral expenses, declared that "All the remainder of my property and estate, . . . of which I die seized or possessed, I hereby give to my said wife Rosaria Cecala" (with power to sell any or all of it if necessary to have sufficient funds for her comfortable living) and "at her death the said property shall belong to my said children Sarah Naso, Rosa Anzalone, and Rosario Cecala as follows, to-wit:" $500, to Sarah; the Almaden Road property, to Rosa; the Redmond Road property, to Rosario. .

The inventory filed by Rosaria described the Redmond Road property and the one-fourth interest in the Almaden Road property as belonging to the estate of Filippo. Appended to the inventory was a statement by Rosaria as executrix that "So far as the same can be ascertained by me, I find that all of the Real Property of said Estate hereinabove described is community property of the Estate of said Deceased within named." In addition, the inventory was verified by Rosaria, who in the verification said that "the annexed inventory contains a true statement of all the estate of said Deceased [Filippo Cecala], which has come to the knowledge and possession of said Executrix . . ."

In her petition for final distribution, Rosaria stated that Filippo during his lifetime executed a homestead covering the Redmond Road property and "That the said widow Rosaria Cecala waives hereby the right of survivorship in said Homestead in order to carry out the purpose and intent of the last Will and Testament of her said deceased husband; and said widow, the petitioner herein, does hereby make her election to take the property given to her in accordance with said last Will

and Testament.'' The decree of final distribution, filed October 7, 1941, found that Filippo did execute the homestead as stated in the petition for final distribution, and further found ''that said widow Rosaria Cecala waived her right of selection under the community property laws of California, and of her right of survivorship in said Homestead in order to carry out the purpose and intent of decedent in the said last Will and Testament; and said widow, Rosaria Cecala, made her voluntary election, and did elect to take the property given to her in accordance with said last Will and Testament,'' and ordered, adjudged and decreed the estate distributed to Rosaria and the children ''in accordance with said last Will and Testament of said decedent.''

May 9, 1946, a will executed by Filippo February 9, 1935, was filed with the clerk of the court. April 9, 1948, after the death of Rosaria, the 1935 will, after contest and a trial before a jury, was admitted to probate. Sarah Naso was appointed administratrix with the will annexed. By the terms of this will, Filippo gave all his property to his wife for life and then to the three children, stating in the will that if the children should not want the property then it should be valued and ''it is to be agreed among the three of my children that Siril [Rosario] Cecala is to have'' the Redmond Road property, and if his share is worth more than the shares of his sisters, he to reimburse them for the difference. He gave the Almaden Road property to the two sisters, Rosa and Sarah, in equal shares. This will was attested by four witnesses, including Filippo's wife, Rosaria. The order admitting the 1935 will to probate was affirmed upon appeal in *Estate of Cecala*, 92 Cal.App.2d 834 [208 P.2d 436] (petition for hearing by the Supreme Court denied Sept. 12, 1949). September 16, 1949, Kilmartin filed a petition to set the homestead aside to the estate of Rosaria. The court appointed appraisers, who appraised the property as of the value of $4,715 at the time the homestead was selected, and $11,000 at the time of Filippo's death. They found that the property could be divided without material injury and a portion including the dwelling house set apart to the party entitled to the homestead, which part they appraised at less than $5,000. May 8, 1950, the court filed its order confirming said report and setting aside to the estate of Rosaria the portion which included the dwelling house. That is the order appealed from.

Save for the possible effect of the discovery and probate of the 1935 will, the election which Rosaria made to re-

linquish her right to the homestead and take under the will was valid and effective. When the decree distributing the estate in accordance with the provisions of the 1933 will became final, that election by Rosaria became res adjudicata and immune from attack.

This homestead, selected from the community property of Filippo and Rosaria, vested (without administration) in Rosaria upon the death of Filippo. (Prob. Code, § 663.) Filippo had no power of disposition over this property, yet he undertook by his will to dispose of it and of all property of the community, giving his wife a life interest in all, with the power of sale of any or all of it if necessary for her comfortable living. She, desiring to take that which Filippo tendered her under the will, did so with her attention expressly directed to the fact that she could not accept the benefits given by the will and at the same time assert her right to the homestead as against the dominion which the testator by his will asserted over the homestead property. If she chose to take under the will, she must treat the homestead as belonging to the estate of Filippo and subject to his testamentary disposition.

It was early ascertained and declared in this state that while it is true that a testator can dispose only of his own property, yet if he assumes to dispose of that which belongs to another, such disposition may be confirmed by such other person by accepting under the will a donation, which necessarily implies such ratification and confirmation. (*Morrison* v. *Bowman* (1865), 29 Cal. 337, 347-352.) That principle has been consistently recognized and applied in later decisions, notably in *Noe* v. *Splivalo* (1880), 54 Cal. 207, and *Estate of Emerson* (1947), 82 Cal.App.2d 510 [186 P.2d 734]. The greater number of decisions in this line have involved the election of a surviving spouse to take under the will of the other member of the community, relinquishing all right to the community property which the survivor might have independently of the will. The principle applies to any other kind of property right which one must relinquish if he desires to take under such a will. This was recognized in respect to the right of a surviving spouse to a homestead in *Williams* v. *Williams,* 170 Cal. 625 [151 P. 10], although the facts of that case did not justify the application of the principle. In the Williams case it appeared that the wife made a declaration of homestead upon her separate property. She died having willed a life estate in all her property to her husband with

remainder over to her children. The husband, named as executor in the will, caused it to be probated, and after administration the decree of final distribution awarded all of the property to the husband and children in accordance with the will. However, the homestead property constituted the wife's entire estate at the time of her death. The doctrine of election did not apply in such a case, where the husband stood to derive under the will no property right or benefit which was not already his without administration and independently of the will. That is not this case. This is a case in which the testator assumed to dispose of, as his own, the homestead, the wife's half of the community, and his own half of the community property. By making the election, she stood to benefit to the extent of a life interest in, and a power of sale over, Filippo's half of the community. ■ Her relinquishment of her community property rights by the election which she made to take under Filippo's will, became conclusive after the decree of distribution in his estate became final. (See *Cunha* v. *Hughes,* 122 Cal. 111, 112-113 [54 P. 535,. 68 Am.St.Rep. 27].) ■ The same element of conclusiveness attaches to her election to relinquish her right to the homestead property. The fact that community property is subject to administration whereas homestead property is not, is of no significance. The principle of election is of broader application. It applies to a son who voluntarily takes under his father's will. He cannot later claim that some of the property given by the will belonged and still belongs to the son. He is estopped by the decree of distribution from urging his title to the property. When he and other parties interested in the will and the estate were before the probate court, he was "then called on to disaffirm the will, and not having then done so, he affirmed it in all its provisions." (*Noe* v. *Splivalo, supra,* 54 Cal. 207, 210.)

■ Equity applies the principle of estoppel, when circumstances are appropriate, irrespective of the homestead character of the property involved. A parol gift of homestead property by a husband and wife will be enforced by a court of equity when the circumstances of the gift are such that a like gift of real property not impressed with a homestead would be enforced. (*Kinsell* v. *Thomas,* 18 Cal.App. 683 [124 P. 220].) In the Kinsell case the court, upon denying a rehearing, gave special consideration to the Civil Code sections which prescribed the manner in which a homestead may be conveyed or encumbered and held them inapplicable to a parol gift of homestead property made under circumstances

which render it inequitable for the donor to disavow the gift. Said the court: "In other words, the enforcement by courts of equity of verbal contracts for the sale or conveyance of land does not proceed upon the theory that the statutes requiring contracts for that purpose to be in writing are invalid or should not be strictly adhered to, but solely upon the theory that a party entering into a verbal agreement to convey his land to another should not be permitted in equity to withdraw therefrom or refuse to execute such agreement and to shield such act, if the same be unconscientious and will operate as a fraud upon the rights of the other party, behind the statute. And we have been shown no reason, and we frankly confess that we can conceive of none, why an oral agreement to sell land upon which there subsists at the time of the making of such agreement a homestead of married persons, such agreement having been jointly made by the husband and wife for whose benefit such homestead has been declared, should not as well, when the exigencies of the situation justify it, be subject to the government of equitable principles, appropriate in equity to such agreements, as are such agreements involving real property upon which there is no homestead"; and, "As stated, equity does not interpose relief as to such agreements upon the theory that the statutory requirement that they shall be committed to writing in order to be enforceable in law is invalid or should not be complied with. On the contrary, equity regards such statutory requirements as of binding force in law; but, acting *in personam* and operating directly upon the consciences of the parties to such agreements, equity merely says that a party to such an agreement will be estopped from standing on his *legal* rights in support of his refusal to carry out his part of the agreement, where the circumstances, as here, disclose that such conduct on his part would be unconscientious and work a fraud upon the rights of the other party." (18 Cal.App. 683 at pp. 695 and 696.)

For like reason, the doctrine of election applies, when the circumstances are appropriate, regardless of the character of the property which the devisee might otherwise claim as his or her own, whether community or separate property or a homestead.

Respondent seeks to avoid these consequences by citation of and quotation from various decisions which we have examined and find inapplicable. For example, respondent relies heavily upon *Dixon* v. *Russell,* 9 Cal.2d 262 [70 P.2d 196],

in support of his point that Rosaria's written waiver of her homestead right under the 1933 will did not destroy that right because the law prescribes the sole method for the abandonment of a homestead right. The Dixon case did deal with an attempted abandonment of a homestead right by a wife to her husband, as a part of a property settlement between them, but which took the form of deeds separately executed by each to the other. This was deemed an ineffective abandonment, because section 1243 of the Civil Code declares that a homestead can be abandoned only by a declaration of abandonment or a grant thereof executed and acknowledged "by the husband and wife, if the claimant is married." That requires the joint and concurrent execution of one and the same instrument by husband and wife, if living. The same code section requires the claimant, if not married, to execute and acknowledge the instrument of abandonment, and section 1244 of the Civil Code requires the instrument to be recorded in the same office as the declaration of homestead. Rosaria's waiver and declaration of election, included in her petition for distribution, presumably was not acknowledged and, we assume, was not recorded in the same office as was the declaration of homestead. But respondent overlooks the fact that Rosaria's written waiver and election did not operate as an instrument abandoning her homestead right. Instead, it evidenced the fact that she took under the will with knowledge that in so taking she would be estopped from asserting her homestead right. In other words, when she exercised her right of election, the law interposed to prevent her and her successors from later asserting any claim, such as the homestead right, inconsistent with the acceptance of the benefits which she received under the will.

Another case relied upon by respondent is *Selinger* v. *Milly,* 51 Cal.App.2d 286 [124 P.2d 631]. In that case, a widow acted as executrix of her husband's will, and included homestead property in the inventory as a portion of her husband's estate. The decree of final distribution awarded her a life interest in all of the residue of the estate, including the homestead property. Several years later, she petitioned for and obtained an order, under section 1723 of the Code of Civil Procedure (now Prob. Code, § 1170), establishing the fact of her husband's death, for the purpose of establishing of record the fact that the homestead became her sole property upon his death. The court, in the Selinger case, held that the decree of distribution in the estate of the husband did not

divest the widow of her title to the homestead property, and that her conduct in the administration of his estate and allegations made by her in that proceeding did not serve to create an estoppel as against her or those claiming under her. Evidently the court did not consider that the doctrine of election was called into play during the course of the administration of that estate, for we find in the opinion no discussion or mention of the doctrine of election. That decision is inapplicable to a case, such as the one before us, in which the doctrine of election clearly is applicable.

Nor is *Gaines* v. *California Trust Co.*, 48 Cal.App.2d 709 [121 P.2d 28], applicable. That was an action by a widow to cancel a waiver and election to take under her husband's will, which she signed during the lifetime of the husband. It further appeared that she did not read either the will or the waiver, and did not have independent advice in the matter. In view of sections 158 and 2235 of the Civil Code, the court held that the husband and wife occupied confidential relations, that her agreement was presumptively entered into by her without sufficient consideration and under undue influence, and that she was entitled to cancel her written waiver and election. There are no such circumstances in the instant case.

*Hart* v. *Taber*, 161 Cal. 20 [118 P. 252], also invoked by respondent, did not involve an election to take under a will. The husband died intestate. The homestead, of course, immediately vested in the wife without administration. She was appointed administratrix of his estate. The final decree in that estate purported to distribute the homestead property, appraised as part of the estate, one-half to the widow and one-half to the children of the intestate. The court found nothing in that situation which estopped the widow from asserting her homestead right. Particularly, it did not involve an election upon her part to take under a will benefits not otherwise available to her.

The admission of the 1935 will to probate did not of itself affect the final decree which distributed the property of the estate of Filippo in accordance with the provisions of his earlier will. The admission of the 1935 will to probate was not an attack, direct or collateral, upon the decree of distribution. It was the exercise of a function of the probate court which established the status of the 1935 instrument as a will. With the establishment of that status, the devisees and legatees named in the 1935 will have a basis for bringing suit in equity against the devisees and legatees under the

1933 will, to charge the latter as trustees for the former upon the ground that the distributees under the 1933 will are holding property under the decree to which they are not entitled. Such questions belong in a court of equity. The probate court does not possess the requisite machinery to try them. (*Estate of Walker,* 160 Cal. 547 [117 P. 510, 36 L.R.A.N.S. 89]; see, also, *Bacon* v. *Bacon,* 150 Cal. 477, 481 [89 P. 317].) In such a suit, equities, if any, claimed by any of the involuntary trustees may be pleaded, ascertained and declared. (See *Morrison* v. *Bowman, supra,* 29 Cal. 337, at 353, concerning the right to reimbursement of a person who, believing he was a trustee, expended money necessary for the preservation of the trust estate; Civ. Code, § 2273, concerning indemnification of a trustee; and Civ. Code, § 2275, and *Title Ins. & Trust Co.* v. *California Dev. Co.,* 171 Cal. 173, 220 [152 P. 542], to the effect that an involuntary trustee, who becomes such through his own fault, has no right to reimbursement.)

Rosaria's successor, Kilmartin, administrator of her estate, was estopped (by her election to take under the 1933 will and her enjoyment of the life estate which she obtained by that election) from instituting and conducting the 1949-1950 proceeding under sections 660 to 668, inclusive, of the Probate Code which culminated in the order which set the homestead apart to him as such administrator.

The order appealed from is reversed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied June 30, 1951, and respondent's petition for a hearing by the Supreme Court was denied July 26, 1951.